### L. A. ISAACKS ET AL. v. J. WRIGHT.

#### Decided April 20, 1908.

**1.—Deed—Misdescription—Suit to Correct—Limitation.**

In a suit of trespass to try title to certain town lots, and to correct the description in the deed conveying the same, evidence considered, and held sufficient to show that plaintiff was not guilty of negligence in failing to discover sooner the mistake in his deed, and hence his action was not barred by limitation, though six years had elapsed since the execution of the deed.

**2.—Same.**

The mere fact that a vendee, in whose deed the property is misdescribed, has the opportunity or power to investigate and discover the fraud or mistake, is not sufficient to charge him with notice or knowledge, but he must be cognizant of such facts as would cause an ordinarily intelligent and prudent man to make an investigation which, if pursued, would disclose the fraud or mistake. A mere suspicion of fraud or mistake is not sufficient to constitute a "discovery" which would set the statute of limitation in motion. The same rule applies in the case of mistake as in the case of fraud.

**3.—Evidence—Sketch or Plat.**

A sketch or plat of the location of the lots in controversy, made by a witness while testifying, and used by him in explanation of his testimony, is not competent evidence unless shown to be complete.

**4.—Deed—Misdescription—Equitable Title.**

Where a purchaser of town lots pays the purchase money, is put in possession of the particular lots intended to be bought on the one hand, and to be sold on the other, and makes valuable improvements upon the faith of his purchase, and belief that the deed made to him conveyed the property, he has an equitable title resting upon a parol sale, and is entitled to be protected in his purchase, though it is subsequently discovered that, because of a misdescription, the deed conveyed no title to the lots in fact bought.

**5.—Appeal—Argument.**

A point for reversal of a judgment, made for the first time, and only in argument before the Appellate Court, will not be considered, the error not being fundamental.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Stevens & Pickett,* for appellants.—If a deed contains an erroneous description of the land conveyed thereby, limitation will begin to run from the date of such mistake in the description, or from the time such mistake could or might have been discovered by the exercise of reasonable care and diligence on the part of the vendee, and after four years from that date an action to correct such mistake is barred. Munson v. Hallowell, 26 Texas, 475; Kuhlman v. Baker, 50 Texas, 636; Alston v. Richardson, 51 Texas, 1; Calhoun v. Burton, 64 Texas, 515; Cooper v. Lee, 75 Texas, 123; Bass v. James, 83 Texas, 110; Rowe v. Horton, 65 Texas, 90; Oldham v. Medearis, 90 Texas, 508; Gerfers v. Mecke, 4 Texas Ct. Rep., 363; Rutherford v. Carr, 11 Texas Ct. Rep., 955; Boren v. Boren, 38 Texas Civ. App., 139; Vodrie v. Tynan, 57 S. W., 681; Cohen v. Shwarts, 32 S. W., 820.

If a party has open to him means which would necessarily lead to the discovery of a mistake he must exercise reasonable diligence in the pursuit of those means, and failing so to do, limitation runs against him from the date of the mistake which he fails to promptly discover, having the means at hand to ascertain it. Gerfers v. Mecke, 4 Texas Ct. Rep., 363; Boren v. Boren, 38 Texas Civ. App., 139.

*Nugent & Foster* and *H. F. Marshall,* for appellee.

REESE, ASSOCIATE JUSTICE.—In this suit J. Wright, appellee, sued L. A. Isaacks, Wm. Morris, and Mrs. L. A. Jemison in trespass to try title to recover lots 5 and 6 in block 5 in the town of Cleveland. Plaintiff also sought by appropriate allegations to have corrected the description in a deed by Mrs. L. A. Jemison to C. C. Cherry and also in Cherry's deed to himself for the lots sold and intended to be conveyed, on the ground of mutual mistake, whereby the lots were described in said deeds as lots 5 and 6 in block 8, whereas he had bought, and it was the intention of vendor and vendee that there should be conveyed by said deeds, lots 5 and 6 in block 5.

Defendants pleaded the general issue, and, by both plea and special exception, the statute of limitations of four years.

Upon the trial, at the request of defendants, the only issue submitted to the jury by the charge of the court, which was submitted as a special issue, was as to whether C. C. Cherry, by the exercise of reasonable care and diligence could have discovered the mistake in his deed dated October 6, 1896, more than four years before the institution of this suit, on July 7, 1902, which question was answered in the negative. At the request of plaintiff the jury was further instructed that reasonable care and diligence was such care and diligence as an ordinarily prudent man would exercise under the same or similar circumstances. The court refused to submit to the jury a charge requested by plaintiff as to his right to recover on the parol sale to Cherry, on the ground that Cherry had testified that he took possession and made improvements on the faith of his deed. The court also refused an instruction requested by plaintiff as to the right of Peebles, as agent of Mrs. Jemison, to sell, on the ground, as stated, that the evidence is uncontroverted that Peebles had such authority and that defendants admitted the mistake and asked the court to submit the one issue of limitation. Upon

the return of the verdict judgment was rendered for plaintiff for the title and possession of the lots and correction of the deeds as prayed for, from which defendants appeal.

The case was before the court upon a former appeal, wherein a judgment for defendants upon an instructed verdict was reversed and the cause remanded. (Wright v. Isaacks, 43 Texas Civ. App., 223.)

The facts are as follows: The property is situated in the town of Cleveland, Texas, and prior to the sale hereinafter referred to, belonged to Mrs. L. A. Jemison, a resident of the State of Alabama. One Tom Peebles, who was the local agent of the H. E. & W. T. Ry. Co., was also authorized to represent Mrs. Jemison in the sale of lots, of which she owned a good number in Cleveland. About October, 1896, C. C. Cherry applied to Peebles to purchase the land in controversy, not knowing the numbers of the lots or blocks. He showed Peebles the ground he desired to buy. From a plat of the town in his office, Peebles got the number of the lots and block and sent to Meldrum, Mrs. Jemison's representative, an application of Cherry to purchase, containing such description. In due time a deed to Cherry duly executed by Mrs. Jemison was received by Peebles, in which, however, the property was described as lots 5 and 6 in block 8. This deed was dated October 6, 1896. The deed was then delivered by Peebles to Cherry, who paid the purchase price, $50. Peebles, by measuring out the proper distance from the railroad track, ascertained and pointed out to Cherry the exact lines of the lots 5 and 6 in block 5 and put him in possession. Cherry took possession at once, put up a substantial fence enclosing the entire property, at an expense of $25, and planted out some fruit trees, at an expense of $2, and remained in possession until January 9, 1900, when he sold the lots for $100 to appellee Wright, who took possession and built a house (value not shown) on the property and has continued in such actual possession up to now. In the deed from Cherry to Wright the same mistake occurs, the description having been copied from Cherry's deed. In September, 1901, Wright bought from Mrs. Jemison lots 5 and 6 in block 8 and received a deed therefor. In April, 1902, in rendering his property for taxes, it was made known to Wright that he had two deeds for lots 5 and 6 in block 8, and no deed to lots 5 and 6 in block 5; in other words, that in his first deed there was a mistake, in the number of the block of the lots he had bought in the first sale. This was the first notice that either Cherry, Wright or Peebles had of this mistake. Peebles had ceased to be agent for the railroad company and for Mrs. Jemison in 1900 and had been succeeded in both capacities by the appellant, Wm. Morris. When he discovered the mistake in his first deed Wright applied to Morris, as Mrs. Jemison's agent, to have the mistake corrected, and left the deed with Morris for that purpose, upon his promise to do so. Instead of doing this, Morris bought the lots from Mrs. Jemison himself for $60 and got a deed therefor, and in a few days thereafter sold them to appellant Isaacks for $250. Both Morris and Isaacks had full knowledge of Cherry's purchase of the lots and of the mistake in his deed. At the time of the purchase by Cherry the town tract was mostly in the woods, and there were no marks or monuments by which to determine the location of the different lots and blocks,

or to determine the proper lot or block number on the plat of the town, of any particular piece of ground. This could be done by taking the plat and making careful investigation on the ground. The only plat of the town was one which hung in Peebles' office on which the numbers of the lots and blocks were marked, but in many cases very dimly. Peebles can only account for the mistake in Cherry's deed upon the theory, either that he mistook the block number 5 on the plat for 8, or that he got the block number right in his application and the person drawing the deed made the mistake. The price of the lots in block 5 and in block 8 bought by Cherry and Wright was the same. Peebles was in ignorance of the mistake and so remained, thinking that the deed conveyed the lots actually sold and delivered to Cherry. Peebles himself owned a lot in block 5 adjoining the lots sold to Cherry on which he lived, his fence extending over to Cherry's lots. Peebles' office was in 250 feet of the lots and he at all times had full knowledge that Cherry was in possession and had improved lots 5 and 6 in block 5. The lots were generally known as Cherry's lots. When Cherry got his deed he had it recorded and put it away. He made no investigation to determine whether the lots sold to him were properly described in the deed. He relied upon Peebles to get him a proper deed. Being put in possession by Peebles of the lots actually sold him, continuing in such possession, fencing the lots, etc., under Peebles' eye, there was nothing to call for such inquiry on his part, or to raise any suspicion that his lots were not properly described during the time of his ownership and occupancy, which continued until January, 1900, when he sold and conveyed to Wright, and the condition was the same with Wright until he discovered the mistake in the manner indicated. The suit was filed July 7, 1902, the mistake having been actually discovered in April, 1902. The facts herein found were sufficiently set out in the petition.

By the first assignment of error it is contended by appellants that the verdict and judgment are contrary to the law and the evidence, for the reason that the uncontradicted testimony clearly shows that C. C. Cherry could, by the exercise of reasonable care and diligence, have discovered that the deed dated October 6, 1896, from Mrs. Jemison to him contained a mistake in the description of the land conveyed thereby, more than four years before the institution of the suit, and the action was barred by limitation.

We think that the facts found by us and above set out furnish a sufficient answer to this contention. Several cases are cited by appellants in their brief in support of the assignment, and it is urgently insisted that they are decisive of the question presented here. There is much force in the arguments urged by appellants based upon these authorities. (Kuhlman v. Baker, 50 Texas, 636; Alston v. Richardson, 51 Texas, 1; Calhoun v. Burton, 64 Texas, 515; Cooper v. Lee, 75 Texas, 123; Rowe v. Horton, 65 Texas, 90.) There is, however, an element in the evidence in the present case that is lacking in all the cases here cited, and others cited in appellants' brief, and that is that Cherry was put in actual possession of the identical lots sold him by Mrs. Jemison's agent, the lines were pointed out, and he enclosed the whole property under the eye of such agent, and so remained with

his full knowledge until he sold to Wright, about two and a half years before the suit was filed. It is clear that if Cherry had memorized the terms of his deed it would not have conveyed to him any knowledge of the mistake. He would not have known that his lots were in block 5 instead of block 8. It is true that with the means at hand, if he had felt called upon to investigate, he could have discovered the mistake, but there was absolutely nothing to arouse in his mind the slightest suspicion with regard thereto. He had been put in possession by the vendor's agent, from whom he had bought, of the identical ground sold to him, after the delivery of the deed; had been advised that this was the identical land conveyed by his deed; had had the lines and corners pointed out, and under the eyes of the agent and with his knowledge, had erected his fence and planted his trees. Under these circumstances, was he guilty, under the law as laid down in the decisions cited, of such laches as to start the statute to running, in failing to get the plat and his deed and with proper assistance verifying the description in the deed to be sure that there was no mistake? A very cautious and suspicious man might have done so, but the man of ordinary prudence in looking after his business affairs would have done as Cherry did under the circumstances. The rule as to the running of the statue of limitations is the same in cases of mistake as of fraud. (Oldham v. Medearis, 90 Texas, 508.)

We think the following statement of the law exactly applicable to the facts of this case, and in no way in conflict with the decisions from the Supreme Court of this State cited by appellants. Speaking of the rule that in cases of mistake the statute begins to run from the time the mistake is discovered, it is further said:

"The rule does not, however, dispense with the necessity of diligence on the part of the complainant where the means of discovery are at hand, and in such cases the statute runs from the time when he acquires such knowledge as would put an ordinarily intelligent person on inquiry which if pursued would lead to the discovery of the mistake; or briefly, from the time when, by the exercise of reasonable diligence, the mistake might have been discovered. But in order for the rule just stated to apply there must be circumstances to excite plaintiff's suspicion or charge him with notice of the mistake; and no duty to make inquiry arises where defendant has so conducted himself to plaintiff's knowledge as to lull him into a sense of security and justify him in believing that no mistake has been made." (25 Cyc., 1197.) The rule stated in the text is supported by the cases of Breen v. Donnelly, 15 Pac., 845; Mayes v. Payne, 60 S. W., 710, and Harris v. Flowers, 21 Texas Civ. App., 669.

It is further stated in the same work that: "In a number of carefully considered cases it is held that the mere fact that the defrauded party has the opportunity or power to investigate and discover the fraud is not sufficient to charge him with notice or knowledge, but that he must be cognizant of such facts as would cause an ordinarily intelligent and prudent man to make an investigation which, if pursued, would disclose the fraud, and that a mere suspicion of fraud is not sufficient to constitute a 'discovery' which would set the statute in motion." (25 Cyc. 1192.)

In the case of Cooper v. Lee, (75 Texas, 123), cited by appellants, there was subsequently a trial and appeal to this court, in which a judgment for Lee, who sued to correct a mistake, was sustained and the plea of limitation not allowed. (Cooper v. Lee, 1 Texas Civ. App., 9.)

The rule as we understand it is that in suits to correct mistakes the statute begins to run from the time that the mistake is discovered, unless the plaintiff has been guilty of inexcusable laches in his failure to sooner make the discovery, in which case the statute begins to run from the time when, but for such laches, he would have discovered the mistake. We think that the jury properly found that Cherry had not been guilty of such laches. The assignment is overruled.

There was no error in refusing to admit evidence tending to show negligence or laches on the part of appellee Wright in failing to discover the mistake in the deed. Wright bought in 1900, two years before the suit was filed. If he had, in fact, acquired knowledge of the mistake at any time after he bought, the action would not on that account have been barred. His failure through negligence to do so could not have had any greater effect than to put the statute in operation. The second assignment of error presenting the question is overruled.

It was admissible to prove that Peebles, after he had pointed out the property to Cherry, remained in Cleveland until the latter part of 1899, and during all that time knew that Cherry was in possession of lots 5 and 6 in block 5 and had enclosed and improved the same. This evidence was proper for consideration in determining whether the circumstances excused Cherry from making investigation as to whether the lots so held by him were those described in his deed. As to the connection of Peebles with the sale as agent of Mrs. Jemison and his authority as her agent, we refer to our opinion upon the former appeal. The third, fourth and fifth assignments by which the question is presented are without merit.

There was no error in overruling appellants' special exception to the petition setting up the statute of limitation. What we have said in disposing of the first assignment, renders unnecessary any further discussion of the sixth and seventh assignments presenting the point. There were sufficient matters of fact, not legal conclusions, set out in the petition to relieve appellee of the charge of laches, and to show excuse for the failure to discover the mistake.

The eighth assignment of error is without merit. It appears from the bill of exceptions that the sketch or plat referred to was not a complete map. At any rate, the evidence was immaterial upon the real issues in the case. It does not appear from the brief that any proof was made that it was a correct map, but it was merely a sketch made by the witness Peebles while on the stand to illustrate and explain his testimony.

What has been said sufficiently disposes of the ninth assignment, which is overruled.

None of the assignments present reversible error. We are of the opinion, however, that under the undisputed facts no other judgment

could have been rendered than one sustaining appellee's title to the lots, under his plea in trespass to try title, for the following reasons:

Appellee paid the purchase money, was put in possession, and made valuable improvements on the lots upon the faith of his purchase and his belief that the deed made to him conveyed the property bought. There can be no question under the settled doctrine regarding parol sales of land, that if Cherry had got no deed at all appellee would be entitled to recover on his equitable title resting upon a parol sale to Cherry supported by payment of the purchase money, possession and valuable improvements. He, in fact, got no deed. We cannot see why in equity his condition can be worse than that of a person whose title rests entirely in parol, by reason of the fact that what was in fact no deed to the lots bought, was erroneously supposed by him to be such a deed. It does not matter that Cherry went into possession, paid the purchase money and made the improvements upon the faith of what he thought was a deed to the lots. As a deed to the lots he had bought the paper was of no effect, and the case stands as though it had never been executed so far as this question is concerned. The question is a new one, so far as we can find. Upon the motion for rehearing upon the former appeal (16 Texas Ct. Rep., 1020) the writer did not agree with the majority in the views then and now expressed, on the question, but is inclined now to think that he was then in error.

The point is made in a written argument for appellants that the judgment should be reversed on account of the failure of appellee to make C. C. Cherry a party defendant. No such question was raised by the pleadings, nor by any assignment of error, nor is the question presented at all by the brief filed for appellants. It can not be raised, so as to require consideration, in the argument alone. Cherry was the main witness for appellee. If any objection had been made that he was not made a party, doubtless it would have been promptly done. By his deed he intended to part with all his title to the lots in question. The failure to make him a party can in no way prejudice appellants.

For the reason that no error is presented by the assignments of error, and for the further reason that no other judgment could have been properly rendered upon the pleadings and evidence than one sustaining the title of appellee, the judgment is affirmed.

*Affirmed.*

Writ of error refused.