**BLALOCK et al. v. JONES.　　(No. 2924.)**

Court of Civil Appeals of Texas. Amarillo.
Dec. 14, 1927.

Rehearing Denied Jan. 4, 1928.

**1. Pleading ☉387—Plaintiff cannot recover on different case than that made by his pleadings.**

Plaintiff must recover on case made by his pleadings, and cannot recover on a different case.

**2. Judgment ☉19—Judgment in court of record must be founded on sufficient facts legally ascertained.**

A judgment in a court of record must be supported by sufficient facts legally ascertained.

**3. Principal and agent ☉175(1)—Where principal acquiesces in agent's representations that principal will not enforce certain terms of land sale contract, waiver of such terms will be presumed.**

Where evidence warrants conclusion that principal acquiesced in agent's representations, which would lead purchasers under land sale contract to believe that principal would not strictly enforce certain terms of the contract, waiver of such terms will be presumed.

**4. Brokers ☉86(1)—Evidence, in suit for commissions, held to warrant finding that defendants waived condition of land sale contract which was to be performed by purchasers before commissions were payable.**

Evidence, in suit for commissions for sale of lands, held to warrant finding that vendor and his general sales agent waived condition of land sale contract, which agency contract provided was to be performed by purchaser before the commissions were to be paid.

**5. Vendor and purchaser ☉86—Waiver of condition in land sale contract may be inferred by vendor's actions or conduct.**

Waiver of condition in land sale contract may be inferred from actions or conduct which amount to intentional relinquishment of right to enforce the condition.

**6. Brokers ☉86(1)—Evidence, in suit for commissions, held to support finding that vendor and his general sales agent ratified and approved sales made by plaintiff.**

Evidence, in suit for commissions, held to support finding that sales made by plaintiff were ratified by vendor and his general sales agent.

---

☉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Trial ⬳352(5)—In suit against vendor and general sales agent for commissions, issues submitting same questions as to each defendant held not duplicitous.**

In suit for commissions for land sales against vendor and his general sales agent, issues submitted asking same questions as to each defendant *held* not duplicitous.

Appeal from District Court, Lamb County; Charles Clements, Judge.

Suit by W. T. Jones, Jr., against I. C. Enochs and John W. Blalock, wherein defendant Enochs brought a cross-action only against defendant Blalock. Judgment for plaintiff against both defendants, and for defendant Enochs on the cross-action, and both defendants appeal. Affirmed.

E. A. Bills, of Littlefield, and Wilson & Randal and J. I. Kilpatrick, all of Lubbock, for appellants.

Lockhart & Garrard and F. D. Brown, all of Lubbock, for appellee.

RANDOLPH, J. This suit was brought by Jones, as plaintiff, against John W. Blalock and I. C. Enochs, as defendants, to recover money alleged to be due him as commissions on the sale of lands. Judgment in favor of plaintiff against both defendants and in favor of Enochs over against Blalock, from which judgments both defendants appeal, but the defendant Blalock has filed no brief in this court.

The plaintiff's original petition is based upon an alleged express contract to pay him 5 per cent. commissions on the amount of the sales price of the land, upon certain terms, including $5 per acre cash. Defendant Enochs answered, and specially pleaded: That John W. Blalock, his sales manager, was not authorized to employ plaintiff as a subagent. That he did not list his lands with the plaintiff for sale, and never agreed to pay the plaintiff any sum as commissions. That on May 20, 1926, the plaintiff transferred and assigned to the defendant Enochs any and all commissions that were then due from Blalock to the plaintiff, and that, if the plaintiff ever had any cause of action against the said Blalock for commissions, all such rights and commissions were transferred by the plaintiff to defendant Enochs, as aforesaid. That, by supplemental contract between defendant Enochs and defendant Blalock, it was expressly provided:

"It is distinctly understood between the parties hereto that no commission accrues to Blalock or any of his employees or subagents until and after the notes taken have been paid, in case, thus providing the receipt by I. C. Enochs of the entire earnest money, which in no event shall be less than one-sixth of the sale price."

That none of the purchasers named in plaintiff's petition have paid the one-sixth of the purchase price provided in said contract. That, if the plaintiff was employed as a subagent or solicitor for said Blalock, he was charged with notice of all the provisions of agency contract existing between the said Enochs and the said Blalock.

By way of cross-action, the defendant Enochs pleaded that Blalock was without power to pledge his (Enochs') credit, and, if he did so, and the plaintiff recover against him, that he (defendant Enochs) recover over against said Blalock.

Defendant Blalock filed an answer, wherein, after a general denial, he pleads that the written contract entered into provided, among other things, that the plaintiff should sell the land belonging to Enochs for $30 per acre, of which consideration $5 per acre should be paid in cash, and further provides that no commissions are due, owing, or payable until such initial cash payment is received from the purchaser; that none of the sales set out in plaintiff's petition were made under and by reason of the contract pleaded by plaintiff, but that, subsequent to the making of the written contract, the plaintiff and defendant Blalock entered into a verbal contract which superseded the said written contract; that, by said verbal contract, it was agreed by and between plaintiff and defendant that plaintiff should have the right to solicit purchasers for and to make sales of the land on a plan known as the "nothing down plan"; that purchasers buying land under this plan would not be required to make any cash payment, but, instead, would be required to cultivate a certain number of acres of land out of each labor purchased the first year, and a greater number of acres each year thereafter; that purchasers would be required to assume the school debt against the land purchased, and the balance of the consideration to be evidenced by notes of the purchasers in favor of said Enochs, payable either in fourteen installments or by applying one-fourth of all cotton and one-third of all crops on the land each year until the debt should be fully liquidated; that defendant Blalock agreed to pay to plaintiff, for any sale made under said verbal contract, 2½ per cent. commission on the selling price of the land, it being understood that no commission should be due or payable until the purchaser for any tract of land should first break out, in a farmerlike manner, the number of acres of land stipulated in the purchaser's contract that such purchaser should cultivate the first year; that, pursuant to said verbal contract, the plaintiff did secure purchasers, who are named in the petition, and who entered into written contracts with the defendant Enochs. It is further set out as to certain such purchasers' failure to comply with the terms of their contract to break and cultivate the amount of land provided in said contract, al-

so setting out the names of other purchasers who complied with their contracts, and admits that the 2½ per cent. is due to plaintiff for such sales, and pleading offset of same against a debt due defendant Blalock by plaintiff, leaving a balance due to Blalock of $3.47.

Plaintiff, by supplemental petition, after general denial, specially pleads that, if it is true that the defendant Blalock was not authorized to employ a subagent or solicitor, as alleged by defendant Enochs, then the plaintiff alleges that the defendant Enochs knew and understood that the plaintiff was employed by Blalock as subagent, and knew that the plaintiff was selling lands belonging to him (Enochs), and accepted the services of plaintiff as such agent, and accepted purchasers so produced by the plaintiff, entered into contracts with them, and consummated such contract, with full knowledge that the plaintiff had produced such purchasers, and was the procuring cause of said sales, and thereby became liable and bound to pay to the plaintiff a sum of money equal to the reasonable value of the services rendered by plaintiff to said Enochs. Plaintiff further alleges that defendant Enochs is thereby estopped from denying such agency, and, in this connection, plaintiff further alleges that such services rendered by him were reasonably worth the sum of 5 per cent. of the total amount of said sales.

Plaintiff further alleges, in said supplemental petition, that he did assign any and all commissions then due him from Blalock to Enochs, but that such assignment was for the purpose of securing Enochs in the repayment of money advanced to the plaintiff by Enochs on or about said date, and was intended for no other purpose; that, at the time of the assignment of said commissions, the said Enochs was liable for same, and said purported transfer was without consideration, and is and was void, for that reason; denies any notice or knowledge of the contract between Blalock and Enochs, and sets up the new contract as to the sale of the land on the "nothing down plan," in the breaking of the land instead of the cash payment, and that, after said contract was entered into, it was not required that the payment of commissions should be conditioned upon the payment of the initial or cash payment; and that Enochs and Blalock expressly waived said condition, which had been exacted by them for the sale of the land. Substantially the same issues were incorporated in plaintiff's second supplemental petition, in reply to defendant Blalock's answer.

Defendant Enochs presents five propositions for our consideration on his appeal, but we will consider only such questions as are important to a disposition of the case on appeal.

The plaintiff, as shown above, in his peti-

tion sought a recovery of the 5 per cent. on the sales price of the land, based on a written contract. The defendants pleaded that this contract was superseded by a verbal agreement to pay plaintiff 2½ per cent. on the total sales price, when the purchaser had broken out a certain number of acres of land on the tract sold him. Plaintiff and Blalock agree on this in their testimony, and Enochs' testimony shows that he was consenting to the new plan of sale, and the evidence also shows that Enochs knew that the plaintiff was engaged in selling the land. The plaintiff, as shown by his supplemental pleadings, also sets up the "nothing down plan" of sale, and prayed for a recovery of the 2½ per cent.

The plaintiff having, in his original petition, declared on a written contract, which, under subsequent pleadings of defendant and plaintiff, was shown to have been superseded by the subsequent verbal contract, and the plaintiff having practically abandoned the attempt at recovery in his original pleading, by declaring upon the verbal contract, it was incumbent upon him to establish his performance of the terms and conditions of the verbal contract. Plaintiff, under the terms of said verbal contract, was entitled to receive 2½ per cent. on the sales price of the land, when a certain number of acres of land was broken out on each tract by the purchaser thereof. This compliance, on the part of the purchaser, with the "nothing down plan," was not shown by the plaintiff, and he therefore failed to prove his cause of action to that extent, but the defendant Blalock himself offered evidence on that point, showing certain purchasers who had complied with their contract and certain others who had not, but failing to show, as to those who had not complied with it, the number of acres that they had actually broken out. Blalock admits the right of plaintiff to commissions on sales to certain of the purchasers and credits, by his pleadings, such commissions on plaintiff's admitted indebtedness to defendant Enochs. As to the other purchasers, there is no evidence that they had broken out the acreage required in their contracts of purchase, and upon which plaintiff's recovery was based. Having failed to establish these facts, the plaintiff was not entitled to a recovery of his 2½ per cent. commissions on such sales.

[1] The plaintiff must recover upon the case made by his pleadings, and cannot recover upon a different case. Hogan v. Kellum, 13 Tex. 396, 400.

[2] A judgment in a court of record must be founded on sufficient facts legally ascertained. McConkey v. Henderson, 24 Tex. 212, 214; M. P. Ry. Co. v. Haynes, 82 Tex. 448, 454, 18 S. W. 605.

[3] The plaintiff having failed in his proof upon the issue above discussed, this would result in the reversal of the case, but for the nec-

essary determination of another ground for recovery pleaded by plaintiff. He pleads that the contractual requirement that the purchasers were to break out a certain amount of the land was waived by defendant Enochs, in the matter of the purchases here involved. The plaintiff testified that Blalock was having trouble getting the contracts signed on account of the short time to break out so much land, and one of the parties was trying to talk him down to 100 acres, and Blalock made the statement that Mr. Enochs would not make it hard on him, and that he made this statement a good many times. The plaintiff does not testify that Enochs ever made any statement to him about waving the breaking of the number of acres of land, as required in the contract. However, Blalock was Enochs' general sales agent, authorized to make sales upon the conditions providing for the breaking of the land. Enochs was on the ground, and knew what was taking place. If Blalock made such representations as to lead the purchasers to believe that, if they did fail in breaking out the required acreage, Enochs would not enforce that clause of the contract, and if the facts and circumstances in evidence were sufficient to warrant the jury in believing that Enochs acquiesced in this representation, the law would presume a waiver of that clause of the contract by Enochs. Enochs testifies:

"It is a fact that in November, 1925, I made a contract with Mr. Blalock to sell on the no-cash payment plan; and to accept in lieu of that contracts which required certain number of acres to be broke and put in cultivation.

"I haven't canceled out any of these purchasers named in this suit because they didn't break out the exact number of acres required in the contract; I haven't canceled any sales. As to whether I have never raised any objection about that, I hadn't expected to go into that feature of it, for the reason they haven't finished the crop out as yet. I possibly will have to cancel some contracts in next month. As to whether I will tell the jury that I would cancel Will's out because he lacked a few acres of breaking out what the contract called for. I should say that each contract would have to be handled on its own merits. As to whether I will answer that question, I couldn't.

"As to whether I would cancel out this man that broke out 124.1 acres, because he didn't break out the other nine-tenths of that land, there might be some reason that would cause me to do that. I couldn't say whether it would be some other reason, and it wouldn't be that reason. I wouldn't be that technical that I would cancel out that man, because he didn't break out the other nine-tenths of an acre; I want to keep the people on the land.

"As to whether I would be satisfied with a substantial compliance with the contract, I would have to give the same answer that I did a moment ago; that circumstances would enter into it. As to whether, if everything else was satisfactory, I would be satisfied with a substantial compliance as to the number of acres broke out, yes and no.

"I didn't tell some of the purchasers and some of the subagents that, if they didn't get to break out the exact number of acres specified in the contract, I wouldn't be hard on them. As to whether I didn't tell them that, I talked with Mr. Blalock always. I don't recall that I said anything to that effect; I don't recall that I told W. T. Jones anything to that effect.

"As to whether I knew that W. T. Jones was acting as agent for the sale of these lands, I knew he was selling my lands. I never accepted his services and his purchasers, I never did deal with Mr. Jones. As to whether you are not talking about dealing with him, but that I did accept the purchasers he procured for my lands, I accepted sales contracts from Mr. Blalock's office. I knew that he was working in the sale of my lands. I knew he had made sales to various people. I learned it from Mr. Jones; he told me he had made several sales. As to whether I made no objection, I had no authority to object to anything he did, because he wasn't working for me.

"As to how come me to loan him any money, I don't imagine Mr. Jones would want me to answer that question. He said he needed the money, had some private dealings to look after, and I told him I wasn't interested in making a loan to him, but he insisted on it, and I let him have some money. That is the reason. As to whether another reason is that I understood that Mr. Jones was entitled to some commissions on the sale of some of that land, no, sir, I didn't understand that. Mr. Jones didn't ever ask me for any commission money. As to whether he told me that Mr. Blalock wouldn't settle with him, and asked me to pay it, he told me that Mr. Blalock wouldn't settle with him, but I told him I didn't know anything about it. I believe he did ask me to accept as payment on the land he bought the commissions he claimed Mr. Blalock owed him. I refused to do that. I turned him down cold on that, because I didn't owe Mr. Jones anything. It was my information that Mr. Blalock owed him, from Mr. Jones. As to whether I learned it from both of them, I don't know as I discussed it with Mr. Blalock.

"As to whether I thought Mr. Blalock was due Mr. Jones some commissions or I wouldn't have made the loan to him, that wasn't my trouble. As to whether if I didn't so understand it, why I had him to make an assignment of his commissions to me, I didn't want him to make an assignment. I asked him what he had for collateral, and he said, 'I haven't got anything,' and then he offered to make this assignment."

[4, 5] Taking these facts into consideration, the affirmative answer of the jury to issue No. 2 that Enochs and Blalock waived the clause requiring the breaking of a certain number of acres by the purchasers was warranted by the evidence.

"A party to a contract who is entitled to demand performance of a condition precedent may waive the same, either expressly or by acts evidencing such intention. * * * 13 C. J. 671.

"A waiver may be express, or may be inferred from actions or conduct, but all the attendant facts, taken together, must amount to an intentional relinquishment of a known right, in order that a waiver may exist." 13 C. J. 671, § 765.

[6] The evidence clearly shows that Enochs knew that the plaintiff was selling his land. He knew that his commissions had not been paid, for he took an assignment of the commissions due the plaintiff to secure the debt owing to him by the plaintiff. We think, therefore, that the verdict of the jury, in answer to issue No. 1 that Enochs and Blalock ratified and approved the sales made by plaintiff, was correct.

[7] These issues, as submitted, are not duplicitous. In each issue only one question which applies to two defendants is submitted.

We have carefully considered each assignment of error, and, finding no reversible error, we affirm the trial court's judgment.