**ATKINS et al. v. DODDS et al.**

No. 4940.

Court of Civil Appeals of Texas. Amarillo.

Oct. 31, 1938.

Rehearing Denied Dec. 5, 1938.

Lyndsay D. Hawkins, of Breckenridge, and Glover Engledow, of Jayton, for appellants.

Turner, Seaberry & Springer, of Eastland, for appellees.

JACKSON, Chief Justice.

. The appellees, W. L. Dodds, C. W. Dodds, J. M. Dodds and Mattie Phillips, a widow, instituted this suit in the District Court of Kent County against appellants, A. A. Atkins, individually, and as guardian of the estate of Richard Atkins, a minor, Lela Knight and husband, A. J. Knight, Ethel Robbins and husband, J. A. Robbins, Pearl Robertson and husband, H. L. Robertson, Eunice Wright and husband, Randall Wright, to obtain, first, a judgment annulling certain provisions of a written instrument which they allege were inserted therein by fraud and that they were induced to sign such instrument by the false representations of A. A. Atkins, their stepfather, who was acting for himself and as agent for his wife, Sarah Atkins, the mother of appellees, and, second, to have the community estate of A. A. Atkins and Sarah Atkins partitioned between themselves and appellants.

The complete instrument, executed by appellees and which they sought to cancel, is as follows:

"The State of Texas,
"County of Stephens.

"Know all men by these presents: That we, W. L. Dodds, Mattie Dodds (a femme sole), C. W. Dodds, and John Dodds, of the

County of Stephens, State of Texas, being children and sole and only heirs at law of Sarah E. Dodds (now Sarah E. Atkins) and her former husband John M. Dodds (now deceased) for and in consideration of the transfer and delivery to us of certain personal property, to-wit: Seventy-Five (75) head of stock cattle and twenty-five (25) head of stock horses delivered to us by the said Sarah E. Atkins and her husband, A. A. Atkins, the aggregate value of said property being Two Thousand ($2000.00) Dollars, the receipt of which said property is hereby acknowledged, we and each of us do by these presents relinquish, release, and quitclaim unto the said Sarah E. Atkins and her husband the said A. A. Atkins, and their legal representatives, all of our right, title, and interest of every nature whatsoever in and unto the community estate of the said John M. Dodds, deceased, and the said Sarah E. Atkins (formerly Dodds), and also relinquish, release and quitclaim all of our right, title and interest unto the said Sarah E. Atkins and A. A. Atkins all our right, title and interest in the community estate existing between the said Sarah E. Atkins and A. A. Atkins at the present time or of which either or both of them may die possessed. And we and each of us hereby accept the property above described to us delivered as aforesaid in full settlement and satisfaction of all claims that we ourselves, our heirs or legal representatives could hereafter have at time, either as heirs of the said John M. Dodds and Sarah E. Dodds, now Sarah E. Atkins, or as heirs of the said Sarah E. Atkins and her present husband, the said A. A. Atkins. This instrument is intended to be a full receipt for all and any amounts that may be due us from the community estate of the said John M. Dodds (deceased) or that may become due us as heirs of the said Sarah E. and A. A. Atkins.

"In testimony whereof, witness our hands at Breckenridge, this the 6th day of June, A. D. 1900.

"W. L. Dodds
"Mattie Dodds
"C. W. Dodds
"John Dodds."

The appellants answered by general denial; alleged certain land claimed by appellees as the separate property of their deceased mother was the homestead of the surviving spouse, A. A. Atkins, and not subject to partition; pleaded the circumstances surrounding the execution of the instrument; the four years' statute of limitation; that the gifts asserted by appellees to be advancements to the Atkins children were absolute donations rather than advancements; the good faith expenditures for the protection of the community estate by A. A. Atkins; and that certain land claimed by appellees as a part of the community estate was the separate property of A. A. Atkins. They also urged and relied on laches and estoppel.

By way of cross-action, the appellants sought to have annulled a power of attorney executed by appellees to A. A. Atkins, on June 2, 1936, and to quiet the title to all the property involved in themselves.

Since no question is raised relative to the sufficiency of the pleadings of either the appellees or appellants, the foregoing, together with what is revealed by the special issues, the findings of the jury thereon, and such other matters as appear in the opinion are a sufficient statement of the pleadings. .

In response to special issues, the jury found, in effect, that appellees agreed with A. A. Atkins shortly prior to June 6, 1900 to accept seventy-five head of cattle and twenty-five head of horses in settlement of their interest in their father's estate, and such agreement related to and included only their interest in the estate of their father; that they did not agree to relinquish their expectancy in the estate of their mother, and A. A. Atkins represented that he would have an instrument prepared to evidence their agreement, and that the instrument as prepared was only a release of their claims as heirs of their father; that the appellees believed the representations and relied thereon and would not have signed the instrument except therefor; that their stepfather did not advise them that the instrument contained provisions relinquishing their expectancy in their mother's estate and they did not know such provisions were in the instrument at the time of its execution, and did not discover prior to February 4, 1933 that the instrument included what they would inherit from their mother, Sarah Atkins; that in signing the instrument they intended to release only their interest in the estate of their father and not their rights in their mother's estate; that A. A. Atkins, without the knowledge of appellees, inserted the clauses in the instrument relinquishing the expectancy of appellees in the estate of their mother; that they did not read the instrument but relied

on the representations of their stepfather as to its contents; that a reasonably prudent person situated as appellees were would not have read the instrument; that the instrument was not read to them; that they did not receive any consideration for the provisions which relinquished their expectancy in the property of their mother; that A. A. Atkins concealed from them the fact that the instrument contained a relinquishment of their expectancy in the estate of their mother; that a reasonably prudent person, situated as the appellees were, would not have discovered, prior to February 4, 1933, that the relinquishment included a release of what they would receive from their mother; that the reasonable market value of the cattle delivered to the Atkins children in 1935 was $30,000; that A. A. Atkins and his wife intended that the cattle so delivered should be advancements from their community estate; that A. A. Atkins, since the death of his wife on April 8, 1936, has in good faith expended $42,050.51 for the protection of such estate.

In response to special issues submitted at the request of appellants, inquiring separately as to each of the appellees, the jury found that neither of them knew or would have known by the exercise of ordinary diligence, prior to February 4, 1933, that the relinquishment dated June 6, 1900, covered and included what they would inherit from their mother.

In answer to special issues also requested by appellants, inquiring separately as to Lela Knight, Ethel Robbins, Pearl Robertson and Eunice Wright, the jury answered that neither of them knew at the time she signed the power of attorney of June 2, 1936, the effect of the relinquishment given by the Dodds children on June 6, 1900.

Upon these answers, judgment was rendered for appellees annulling the provisions of the instrument dated June 6, 1900 purporting to relinquish their expectancy in the estate of their mother at her death, and removing the cloud cast upon their title by virtue of such provisions. It was adjudged that appellees owned ⅘ₛ of the property described in the judgment, including the $30,-000 advancements made in 1935 to the Atkins children; set aside the homestead to the appellant, A. A. Atkins; ordered partition; appointed commissioners of partition; directed the payment of the advancements to the commissioners, and approved certain expenditures made by appellant, A. A. Atkins, for the protection of the community

estate subsequent to the death of his wife; refused appellants any recovery on the cross-action, and denied all other relief.

We shall not discuss separately the 191 assignments of error urged by appellants under their 169 propositions. Such a detailed discussion, we think unnecessary, would be of no practical value, and would extend this opinion to an unreasonable length.

The appellants complain under numerous propositions that the court erred in refusing to direct a verdict in their behalf because, (a) there was neither pleading nor proof that Sarah Atkins was guilty of fraud in connection with the instrument, certain provisions of which are sought to be cancelled; (b) no evidence was offered to show that A. A. Atkins was the agent of Sarah Atkins in the transaction; she was present at the execution of the instrument, participated in closing the deal, and the fraud of the husband would not warrant the cancellation as to the wife; (c) the instrument was not divisable and could not be annulled in part; (d) all the evidence admitted to show fraud should have been excluded on appellants' objection that it was in violation of article 3716; and (e) the claims of appellees were barred by the statute of four years' limitation.

██ The record shows that John M. Dodds, Sr., and Sarah Black became husband and wife in 1874 and appellees were their only children. Mr. Dodds died intestate in 1879 and no administration was had upon his estate but his surviving wife, without obtaining authority from the courts, proceeded to handle, control and manage the community of herself and deceased husband, which, had an approximate value of $5,000. On his death, his interest in the community immediately vested in the appellees who were his children. There was no guardian appointed for them, no administration had on the estate and no partition thereof. Sarah Dodds and appellees owned the property as tenants in common.

In 1885, Mrs. Dodds became Mrs. Sarah Atkins by her marriage with A. A. Atkins and the community estate of herself and her deceased husband at that time had an approximate value of $8,000.

To this last marriage five children were born, four daughters, who are appellants, and a son, Floy, who died March 13, 1936, preceding the demise of his mother on April 8, 1936. He left a son, Richard, who is the

minor represented here by his grandfather and guardian, A. A. Atkins. Each of the appellees, until he or she married or became of age, lived with his mother and stepfather, worked as members of the family, but received no compensation other than the care and protection bestowed upon him as a child. Their relations with their mother and stepfather, half brother and half sisters were intimate, pleasant, agreeable and affectionate until after the death of their mother. When A. A. Atkins and Mrs. Dodds married in 1885, he had, according to his testimony, not exceeding $750, but no question is made as to his separate property and no further mention will be made thereof. He was, immediately on his marriage, given by his wife the complete management and control of the property belonging to the first community. When called to the stand by appellees, he testified that his wife never gave another check after she and he married, had nothing to do with the business, but entrusted him with the entire management thereof. He took charge of everything and his wife refused to have anything to do with the property or the business; that the first community at the time of his marriage had twenty-five head of horses and about one hundred head of cattle; that he disposed of some of this personal property and invested the proceeds in land.

■ According to this record, the mother of appellees, during her widowhood, and A. A. Atkins, after he married their mother, held their interest in their father's estate in trust for their benefit and they were entitled to an interest in all property purchased with community funds prior to the admitted sale by them of their interest in their father's estate to their mother and stepfather June 6, 1900, but thereafter their only interest was their expectancy from their mother's interest in the first and second communities. Spencer et al. v. Pettit et al., Tex.Com.App., 2 S.W.2d 422; Garcia et ux. v. Garcia et al., Tex.Civ.App., 4 S.W.2d 257.

The provisions which appellees contend were inserted in the contract fraudulently and which the court annulled by the judgment, recited that appellees were relinquishing to A. A. and Sarah Atkins "all of our right, title and interest in the community estate existing between the said Sarah E. Atkins and A. A. Atkins at the present time or of which either or both of them may die possessed;" they also released A. A. Atkins

and Sarah E. Atkins from all claims that appellees or their heirs or legal representatives "could hereafter have at time either as heirs of the said John M. Dodds and Sarah E. Dodds, now Sarah E. Atkins, or as heirs of the said Sarah E. Atkins and her present husband, the said A. A. Atkins." The instrument recites that it is a full receipt for all amounts appellees are entitled to from the community estate of their deceased father, "or that may become due us as heirs of the said Sarah E. and A. A. Atkins."

Mr. Atkins testified that his wife requested appellees to go to Breckenridge and sign the relinquishment; that she participated in the negotiations, consented to and knew the terms of the contract, and was present at the office of Mr. Veale when the relinquishment was executed; that he employed Mr. Veale to prepare the instrument; instructed him what to put in it; paid him for his services; and that the instrument was read to appellees before they signed it.

No complaint is made because the decree adjudges all the property involved in this partition suit to belong to the community estate of A. A. and Sarah Atkins. It appears, therefore, that neither the part of the relinquishment which is conceded to be valid nor those paragraphs which were annulled for fraud involved the disposition of the separate property of Sarah Dodds Atkins.

■ The law, in effect, makes the husband the agent of the wife for the management, control and disposition of the community property, and his acts, when not in fraud of her rights, are binding upon her.

■ Article 4619 of the Revised Civil Statutes, provides: "All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife, and during coverture may be disposed of by the husband only. All the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved." Under this statute, the husband is entitled to the exclusive management and disposition of the community estate. Stone et al. v. Jackson et al., 109 Tex. 385, 210 S.W. 953; 23 Tex.Jur. 187, para. 87; Law of Marital Rights in Texas, Speer, Third Edition, page 173.

1016

■ We think, however, if the law did not make A. A. Atkins the agent of his wife, the testimony shows conclusively that he was acting as her agent; that she acquiesced in and consented to the terms of the relinquishment and ratified his acts, including the fraud, and would be bound thereby. Smith v. Olivarri et al., Tex.Civ. App., 127 S.W. 235; Allen et al. v. Garrison, 92 Tex. 546, 50 S.W. 335; Barber et al. v. Keeling, Tex.Civ.App., 204 S.W. 139.

■ A. A. Atkins and his wife were joint beneficiaries under the purported relinquishment; hence, if the provisions in the instrument designed to dispose of the expectancy of appellees in their mother's estate at her death were induced by ·the fraud of A. .A. Atkins, such provisions could be annulled by the court without the cancellation of the entire instrument. Oar et ux. v. Davis et al., Tex.Civ.App., 135 S. W. 710, affirmed by the Supreme Court, 105 Tex. 479, 151 S.W. 794; 7 Tex.Jur. 1012, para. 77; 9 C.J. 1261; Chambers v. Wyatt, Tex.Civ.App., 151 S.W. 864.

■■ This brings us to an examination of appellants' contention that all the evidence introduced of any probative force tending to show fraud was in violation of article 3716 and admitted over their objection.

The judge carefully excluded the testimony of each of the appellees to the effect that he was present in the office of Judge Veale when the contract ·was signed on June 6, 1900; that his stepfather and mother were there; that he did not read the instrument, did not hear it read, did not know that the information contained a relinquishment of his interest in the mother's estate; that had he so known he would not have signed it; that he believed the instrument had been prepared as his stepfather had said; that he had confidence in him and was paid no cash for signing the instrument, nor that he received nothing except the livestock.

Three of the appellees were permitted to testify to separate and distinct conversations had with his stepfather preceding the signing of the relinquishment when no one else was present, and such conversations tended to show fraud, but since none of these were in the presence of and do not purport to be a transaction with or statement by the deceased, in our opinion, they were not inhibited by the statute.

"Neither do we think the evidence was subject to the objection that same was forbidden by article 3716. That statute denies to this witness the right to testify 'as to any transaction with, or statement by the testator * * * unless called to testify thereto by the opposite party.' A clear statement of the applicable test in determining whether evidence comes within the inhibition of this statute is made by our Supreme Court in Holland v. Nimitz, 111 Tex. 419, 425, 232 S.W. 298, 299, 239 S.W. 185, in this language: 'The object of the statute was to prohibit the interested heirs and legal representatives from testifying to any facts, or opinions, based upon observations, arising out of any transaction with the decedent which the decedent could, if living, contradict or explain. Death having sealed the lips of .one of the parties, the law, for reasons founded upon public policy, seals the lips of the other.'

"In the case of International .Travelers' Ass'n v. Bettis (Tex.Civ.App.) 3 S.W.2d 478, 480, reversed on other grounds in 120 Tex. 67, 35 S.W.2d 1040, the opinion quotes with approval this statement of the rule taken from the opinion in Van Wagenen v. Bonnot, 74 N.J.Eq. 843, 70 A. 143, 18 L. R.A.(N.S.) 400: "The test laid down in our decisions in ascertaining what is a "transaction with" the deceased about which the other party to it cannot testify is to inquire whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge.' " Huff v. Huff, Tex.Civ.App., 72 S.W.2d 675, 676.

See, also, Olschewske v. Priester et ux., Tex.Com.App., 276 S.W. 647; Wells v. Hobbs, 57 Tex.Civ.App. 375, 122 S.W. 451; 70 C.J. 383; 28 R.C.L. 496.

■ Measured by the legal test announced, the deceased Mrs. Atkins, had she been living, present and testifying, could not have, of her own knowledge, contradicted any of the testimony given by these witnesses relative to their negotiations with their stepfather. These conversations were with A. A. Atkins, the agent of the deceased, but the statute cannot be invoked to exclude the testimony of an agent.

In Bennett & Lockwood v. Charles E. Frary, 55 Tex. 145, the court says: "So when the deceased contracting party was represented in the bargain by an agent who is capable of testifying, then the other contracting party, unless expressly excluded by statute, may ·be a witness." See, also,

Smith v. Olivarri, supra; Mounger v. Daugherty, Tex.Civ.App., 138 S.W. 1070.

 The appellees were each permitted, over objection, to testify that he did not intend by signing the relinquishment to sell their expectancy in their mother's interest in the community estate of herself and A. A. Atkins.

 In Dean v. Dean, Tex.Civ.App., 214 S.W. 505, it is said [page 508]: "We do not think that it was competent for appellant to testify, over objection of appellee, that his wife agreed to hold the property in trust for him, for the reason that such testimony is rendered incompetent by the statute above set out. For which reason we overrule appellant's fifteenth assignment. But this would not preclude appellant from testifying as to his intention in having Turner make the deed to his wife. * * * The intent with which a party does an act is a fact known to him, and he is a competent witness to testify as to such fact. Berry v. State, 30 Tex.App. 423, 17 S.W. 1080. Had his wife been alive, she could not have testified that such was not his intention; for she could not have known such fact. Had she so testified, it would have been only the statement of her opinion, and not the statement of a fact." See, also, American Exchange Nat. Bank of Dallas v. Keeley, Tex.Civ.App., 39 S.W.2d 929, and authorities cited.

Relative to appellants' insistence that they were entitled to a peremptory instruction, since if any cause of action ever existed in favor of appellees, the testimony disclosed that it had long since been barred by the statute of four years' limitation, the record, in addition to showing the close, intimate and affectionate relation and association of appellees with appellants and their mother, all of which continued until her death, reveals that A. A. Atkins never informed appellees that the relinquishment contained a purported disposition of their expectancy in their mother's property; that the instrument was on record, but no act was done by any of the appellants that would have put appellees on inquiry as to the contents thereof, and none of the children of the second marriage knew of the existence of or the contents of said relinquishment and release until February 4, 1933.

On June 6, 1936, A. A. Atkins requested and secured a power of attorney from his children and from appellees reciting that each was an heir and entitled to share equally in the estate of their mother, but did not advise them of the contents of the relinquishment. He also filed an inheritance report stating that each of the appellees was entitled to a one-ninth interest in their mother's estate. As guardian, he filed an inventory asserting that the minor was entitled to an undivided one-ninth interest in his grandmother's estate. These facts are uncontroverted and we deem it very significant that for a period of more than thirty years A. A. Atkins withheld from appellees and his own children all information relative to the release by appellees of their expectancy in their mother's estate, because if such relinquishment were binding, the appellees had no interest in said estate and the children and grandchild of A. A. Atkins would have each had a one-fifth interest therein. .

 Mr. Speer, in his "Law of Marital Rights," Third Edition, on page 123, para. 92, among other things, says: "Considering the very intimate relations and the unlimited confidence that the child must of necessity impose in the parent, courts of equity at all times feel bound to guard and protect the relation of parent and child from every semblance of fraud and undue influence. Business transactions between parent and child are reviewed with a jealous vigilance and after the transaction is scrutinized closely, the court will, upon a showing of the least fraud or unfairness, feel impelled to set such transaction aside."

 Where special relations of trust and confidence exist between parties, such as parent and child, and such trust and confidence is the agency through which the fraud is accomplished, the defrauded party is under no duty to make an investigation until some fact or circumstance is brought to his attention that would put a person of ordinary prudence on inquiry and, until this occurs, he is authorized to rely upon the confidence he reposes in the other party.

 In Dean v. Dean, supra, the court holds: "In such case the child may continue to trust the father, without using any means to discover the fraud until it has, without such inquiry, come into possession of such facts as would put an ordinarily prudent person upon inquiry, at which time and not before, if the child has arrived at the age of maturity, it is bound, as any other person would be, to reasonably pur-

sue such inquiry, and at which time, and not before, the statute of limitations will begin to run."

In Isaacks v. Wright, 50 Tex.Civ. App. 312, 110 S.W. 970, writ denied, the court quotes the following with approval [page 972]: " 'In a number of carefully considered cases it is held that the mere fact that the defrauded party has the opportunity or power to investigate and discover the fraud is not sufficient to charge him with notice or knowledge but that he must be cognizant of such facts as would cause an ordinarily intelligent and prudent man to make an investigation which, if pursued, would disclose the fraud, and that a mere suspicion of fraud is not sufficient to constitute a "discovery" which would set the statute in motion.' " See, also, Hand et al. v. Errington et al., Tex.Civ.App., 233 S.W. 567, affirmed by the Supreme Court, 242 S.W. 722; Commercial Bank & Trust Co. v. Buntain et al., Tex.Civ.App., 278 S.W. 503; Stone v. Burns et al., Tex.Civ. App., 200 S.W. 1121; Ebberts et al. v. McLean et al., Tex.Civ.App., 68 S.W.2d. 1077, affirmed 128 Tex. 573, 98 S.W.2d 352.

Limitation did not begin to run until the fraud was, or by the exercise of ordinary prudence should have been, discovered. The jury found that appellees did not discover, prior to February 4, 1933, that the instrument purported to relinquish their expectancy in their mother's estate, and that a reasonably prudent person, situated as appellees were, would not have discovered prior thereto that the instrument included their expectancy therein. Under this record and the authorities, we are not warranted in saying that the appellees were barred as a matter of law from a recovery by the four years statute of limitation.

What we have said we deem sufficient to dispose of adversely to appellants all assignments challenging the sufficiency of the testimony to warrant the ·findings of the jury.

The appellants cannot, under this record, avail themselves either of their plea of laches or estoppel.

None of them asserted a claim adverse to appellees' expectancy in their mother's estate. None of them, with the exception of A. A. Atkins, knew of the purported release of such expectancy and he not only failed to make any adverse claim thereto, but after the mother's death, recognized the rights of appellees to participate in their mother's estate, share and share alike with the Atkins children, and it is clear, we think, that appellants disclose no such injury or damage as would create either laches or estoppel. 27 Tex.Jur. pages 26 and 27.

Appellees' cause of action falls within the contemplation of the provisions of article 5529 of the statute of limitations of this state.

In Hendricks v. Martin et ux., Tex.Civ. App., 267 S.W. 1047, it is said [page 1051]: "The rule is that, where an alleged cause of action, either legal or equitable, comes within any. specific provision of the statute of limitations, then the equitable defenses of laches and stale demand do not apply. In such cases the statute of limitations will govern and must be pleaded."

The opinion cites many authorities in support of this doctrine. See, also, O'-Loughlin v. Moran, Tex.Civ.App., 250 S.W. 774; Isaacks v. Wright, supra.

The appellants assail as erroneous some eighteen of the special issues submitted by the court in his main charge, asserting as a reason therefor that they are each duplicitous, multifarious and involve more than one issue.

Inasmuch as all of these assignments present errors involving the same complaint, we shall· consider them together and select as illustrative of the issues assailed with the objections thereto, Special Issue No. 1, the answer and objection to which are as follows: "Do you find from a preponderance of the evidence that shortly prior to June 6, 1900, plaintiffs agreed with A. A. Atkins to accept seventy-five (75) head of cattle and twenty-five (25) head of horses in settlement of their interest in their father's estate? Answer: Yes."

The objection urged is as follows: "These parties object and except to Special Issue No. 1 in the proposed charge of the court on the ground that same is duplicitous and multifarious, and involves more than one issue as forbidden by statute, in that same inquires as to whether all the plaintiffs agreed with A. A. Atkins as therein contemplated, whereas, a separate issue should be presented with regard to each of the plaintiffs herein, if any issue is to be submitted thereon."

Similar objections to the other special issues challenged were overruled and appellants excepted.

The pleadings of the appellees alleged the same cause of action for each of them. The fraud and misrepresentations alleged are identical as to each, and the testimony introduced to sustain these issues was the same. True, each of the appellees related his respective version of the fraud perpetrated on him, but there is nothing in the record to justify the jury in arbitrarily giving more credence to one of appellees than another. The appellants filed a joint answer and cross-action and the defenses and cross-action relied on by each appellant are identical. The testimony introduced in behalf of one appellant was competent, pertinent and applied to the claims of the others. There was but one transaction and each appellee sought the same relief and each appellant urged the same defense.

The complaint is that the court erred in not submitting four special issues each of which contained the name of one appellee, and in not obtaining a separate answer to each, since article 2189 provides: "such special issues shall be submitted distinctly and separately," and article 2190 requires that the court "submit all the issues made by the pleading." No contention was made at the trial that any appellee was in a different situation from the others and no evidence introduced on any issue applied to one and not to all of the appellees.

In the case of Keels et al. v. Metzler et al., Tex.Civ.App., 94 S.W.2d 799, a man and his wife sued to set aside a deed for fraud and misrepresentation. The court submitted to the jury in one issue the representations made to Mrs. Metzler and Mr. Metzler and it was said [page 803]:

"Appellants on appeal insist that the trial court, in submitting to the jury the special issues relating to representations applying equally to Mrs. Metzler and Mr. Metzler, erred to the prejudice of appellants, for which the judgment should be reversed.

"There is no merit, we think, in the contentions made; therefore we overrule them without further comment."

In Blalock v. Jones, Tex.Civ.App., 1 S. W.2d 400, the suit was against two defendants for a commission. The jury was asked in Issue No. 1 if the defendants ratified and approved the sales made by plaintiffs and in Issue No. 2 if they waived a provision of the contract, and the court held [page 404]: "These issues, as submitted, are not duplicitous. In each issue only one question which applies to two defendants is submitted."

In Consolidated Casualty Ins. Co. v. Fortenberry, Tex.Civ.App., 103 S.W.2d 1049, writ refused, the suit was to set aside a compromise settlement for alleged fraud and the court stated [page 1050]:

"To the questions submitted inquiring whether the representations alleged were made by King and Wood, or either of them, appellant objects upon the ground of duplicity. The grouping of facts in a single question, as distinguished from the grouping of distinct ultimate issues, is permissible and often indispensable. Speer on Special Issues, §§ 185–94–187 and 190.

"The questions stated are not subject to the objection urged against them."

To support this finding, numerous authorities are cited.

The appellants' contention that the special issues in the court's main charge were multifarious, duplicitous and presented more than one issue, under the facts in this record, do not, we think, present error.

█ The appellants urge as reversible error the form of Special Issue No. 20 because it is, they claim, on the weight of the evidence and assumes that the appellees did not discover prior to February 4, 1933 that the relinquishment they executed on June 6, 1900 released their expectancy in their mother's estate. The issue attacked is as follows: "Do you find from a preponderance of the evidence that a reasonably prudent person situated as were W. L. Dodds, Mattie Phillips, Carrol Dodds and J. M. Dodds, in the exercise of ordinary diligence, would not have discovered prior to February 4, 1933, that the written relinquishment dated June 6, 1900, covered and included what they would inherit from their mother, Sarah Atkins? Answer: They would not have so discovered."

The appellees, to defeat limitation, alleged that they did not discover the existence of the fraud perpetrated on them prior to October 6, 1936 and that a person of ordinary prudence, in the exercise of reasonable care, under all the circumstances, would not have discovered the existence thereof. The relinquishment was

executed June 6, 1900 and was placed on record in Stevens County on September 1, 1900, and the jury found with appellees' contention.

The rule is well settled that in suits for relief against fraud, limitation begins to run from the time the fraud is discovered, or from the time it should have been discovered by the use of reasonable diligence.

■ The language of this special issue clearly assumes that the appellees had not discovered the fraud perpetrated on them prior to February 4, 1933, and was manifestly on the weight of the evidence. In effect, the court advised the jury his conviction from the testimony. The materiality of this question was recognized in the pleadings of both appellees and appellants. The testimony presented the issue, the court recognized it to be controverted, submitted it to the jury, and should not have in the charge assumed its existence as a fact.

■ The court in Special Issue No. 10a submitted, and the jury found that the appellees did not discover prior to February 4, 1933 that the relinquishment covered what they would inherit from their mother. However, the answer to Issue No. 20 is not made dependent upon the answer to No. 10a, or any other answer, and the finding on 10a does not cure the assumption in No. 20.

As said in Chicago, R. I. & G. Ry. Co. v. Bernnard, Tex.Civ.App., 290 S.W. 292, 295: "True, the court, in his first issue, submitted for the determination of the jury whether or not appellant was guilty of negligence in opening and leaving open the switch, but appellee's right to recover for the injuries received by the derailment of the motorcar, in which he was riding, depended on appellant's negligence in opening and leaving open said switch. This was an issue of fact which appellant was entitled to have determined by the jury, without any intimation, suggestion, or assumption from the court as to the existence of such act of negligence. Chicago, R. I.

& G. R. Co. v. Hammond (Tex.Civ.App.) 286 S.W. 483; Freeman v. G., H. & S. A. R. Co. (Tex.Com.App.) 285 S.W. 607; Turner et al. v. Dinwiddie et al. (Tex.Civ. App.) 276 S.W. 444; Texas & P. Coal Co. v. Sherbley, (Tex.Civ.App.) 212 S.W. [758], 761."

See, also, Texas Employers Ins. Ass'n v. Van Pelt, Tex.Civ.App., 83 S.W.2d 392; Texas Power & Light Co. v. Culwell et al., Tex.Com.App., 34 S.W.2d 820.

■ It was also erroneous for the court to assume that the jury would answer Special Issue No. 10a in favor of appellees. Cannaday et al. v. Martin et al., Tex.Civ. App., 69 S.W.2d 434.

■ We will say generally that in our opinion, the testimony of certain witnesses pertaining to a letter which Mrs. Sarah Atkins claimed she had written to her second husband should have been excluded. There was no evidence of the time when such letter was written, nor of the contents thereof, none that it was lost, and no testimony of the purpose for which it was written.

■ The testimony of Mrs. Mary Dodds, the former wife of W. L. Dodds, as to a conversation she had with her husband before they were divorced, was properly excluded.

■ Admittedly, the cattle delivered to the Atkins children by A. A. Atkins and his wife belonged to the community estate, and although adjudged to be advancements, the appellants were entitled to retain one-half of the value thereof without accounting to appellees therefor.

Since the judgment is reversed, it is unnecessary to determine whether the arguments complained of constitute reversible error, but we consider it proper to say that attorneys should not, in their zeal and enthusiasm for their clients, indulge in remarks before a jury that will require reversal of the judgment.

The judgment is reversed and the cause remanded.