## CARR v. McGINLEY CORPORATION.

### No. 5065.

Court of Civil Appeals of Texas. Texarkana.

April 29, 1937.

Bramlette & Levy and Richard B. Levy, all of Longview, and S. L. Lewis, of Dallas, for appellant.

Robt. C. Pepper, of Fort Worth, and G. K. Gilbert, of Longview, for appellee.

HALL, Justice.

Appellant and appellee in March, 1932, purchased oil leases covering two 40-acre blocks of land in Zapata county, thought to be oil-bearing, for a consideration of $9,000. After the purchase of said oil leases and on March 17, 1932, they entered into a contract with one Joe M. Gier to drill well No. 1 on said land for a consideration of $2,750. A short time after completion of well No. 1, believed to be an oil producer, well No. 2 was begun by the same drilling contractor for a like consideration and was completed as a dry hole. Well No. 2 was drilled to a greater depth than well No. 1 in effort to reach pay sand, but the effort was fruitless. Well No. 1 also failed to produce oil in paying quantities, and about May 1, 1932, it was abandoned. The contract price, or a greater portion thereof, for drilling well No. 1 was paid, but appellant, after paying $500 of his part of the contract for drilling well No. 2, refused to pay his portion of the balance due the contractor, leaving appellee to pay the remainder of the contract price for well No. 2. There were other charges against both wells in addition to the contract price of $2,750 each. This suit was brought by appellee on December 15, 1933, against appellant to recover the amount owing by appellant on his part of the contract price of well No. 2 and other expenses growing out of the drilling of both wells. On February 12, 1934, appellant filed his answer consisting of general demurrer, special exceptions, and general denial. On May 31, 1935, appellant filed his first amended answer consisting of general demurrer, special exceptions, plea in abatement, general denial, and, in addition, a cross-action seeking recovery of the sum of $2,250, alleging as a basis therefor that he had been deceived and defrauded by Wm. J. McGinley, president, and H. J. Heartwell, agent, of appellee, with respect to the price paid for the leases covering the two tracts of land. He alleged that the agents of appellee, McGinley and Heartwell, represented to him that the purchase price for the leases covering the two tracts of land was $9,000; that he relied on said statements and paid to appellee the sum of $4,500; that the true consideration for said oil leases was $4,500. Appellee by supplemental petition denied the allegations of fraud and deceit and alleged, further, that any fraud charged against it in appellant's cross-action was barred by the two-year statute of limitation (Vernon's Ann.Civ.St. art. 5526). Appellee also denied the agency of H. J. Heartwell. Answering appellee's plea of limitation as related to his allegation of fraud, appellant alleged that he first learned of the fraud practiced upon him by the agents of appellee when certain depositions were returned from Laredo, Tex.

The case was tried to a jury. At the conclusion of all the testimony, upon motion of appellee, the trial court instructed the jury to return a verdict for it. The court rendered judgment for appellee, and appellant prosecutes his appeal to this court.

Appellant's first proposition is: "The testimony as to development expenses by Wm. McGinley, an interested party, uncorroborated, ambiguous and self-contradictory, and opposed by the inferences from surrounding circumstances and the testimony of another witness, was not the proper basis for an instructed verdict." There is no doubt but that the above proposition states a correct rule of law. Sigmond Rothchild Co. v. Moore (Tex.Com.App.) 37 S.W. (2d) 121. But we do not think this case is controlled by the above proposition of law. Wm. McGinley testified that appellee had paid drilling contractor Gier the balance due him for drilling wells No. 1 and No. 2. It is true he paid off the indebtedness by adjusting a claim he or his company had against Gier, but it amounted to the pay-

ment of the balance due Gier by appellee and appellant. It could make no difference to appellant whether appellee paid Gier cash or paid him by liquidating a debt owing Mc-Ginley or the corporation by Gier, so long as the indebtedness due the contractor for drilling these wells was paid. Corroborating Wm. McGinley, the interested witness, the drilling contractor Gier testified that he had drilled the wells for the parties to this suit and that there was no money due him under the terms of the drilling contract. Moreover, appellant in his testimony nowhere denies the account sued on, except by claiming to have paid more than his one-half of the original purchase price of the leases on the two tracts of land. His testimony with respect to this phase of the case is:

"Q. Now, the total cost, as itemized here, is $7,840.30 for the drilling of the two wells, including the casing. Now, one half charged to A. P. Carr, $3,920.15. You have not paid that much? A. I have not paid anything except what the record shows I paid.

"Q. It shows here credits of three $500.00 payments, March 31, April 1st, and April 21, 1932. Shows you paid Joe Gier $375.00 and by way of salvage casing sold, entitling you to a credit of $452.50. A total credit of $2,327.50, as against the amount charged of $3,920.15, which leaves a balance due and owing by you to McGinley Corporation $1,592.65. You don't say that is incorrect, do you? A. I don't know. * * *

"Q. I will ask you, have you examined the account for McGinley Corporation as rendered to you? A. Yes, sir, I examined those accounts.

"Q. I believe you testified this morning you paid the entire consideration for drilling of the first well? A. Yes, sir.

"Q. And you paid a portion of your part of the cost for the second well? A. Yes, sir.

"Q. You testified to that effect this morning. Why have you not paid the remainder? A. Principally because I learned—I got the information, at least, that I had paid all or substantially all of the cash consideration for the two leases in controversy. Under the terms of my agreement with Mr. Heartwell and Mr. McGinley, I was to have paid one-half."

On May 2, 1932, after both wells had been drilled and abandoned as nonproducers, appellant wrote W. J. McGinley the following letter:

"Dear Mr. McGinley: Got your letter; nothing to stew about; we just lost, and that's all there is to it. I agree with my brother's letter of April 28th. Let's close this out and turn to something else. I suggest that you prepare and submit detailed statement; have Mr. Gier make up his statement of account and forward this to me with yours. You might have them made in duplicate for us, so that one can go to Trem and one to me, and together we will work out the cash to pay the bills, although it may not be at once, as Trem has had nearly $2000.00 of extraordinary expense recently. Also outline what salvage if any, we will be able to get out of the deal.

"I am planning to move to California this fall, possibly San Diego, and will hope to see you there later. Kind regards and best wishes,

"Your friend, Carr."

The person referred to in the letter as "Trem" is a brother of appellant who aided him in financing his part of the original purchase price of the leases. So concerning the account sued for, the interested witness McGinley is not only corroborated by the drilling contractor Gier, but his testimony is in nowise contradicted by appellant, and we are of the opinion that McGinley's testimony with this corroboration is sufficient to form the basis of an instructed verdict in favor of appellee.

Appellant's second proposition is: "Appellant, A. P. Carr, was entitled to have his cross action submitted to the jury as there was evidence to support his allegation that although he exercised all possible diligence in attempting to discover the fraud perpetrated upon him, he was unable to do so until shortly before the cross action was filed."

Appellant in his second amended original answer, which was the last pleading filed by him on July 2, 1935, reiterates that he paid the sum of $4,500 to the McGinley Corporation upon the representations of Wm. J. McGinley, president, and H. J. Hartwell, agent, for said corporation, that that amount constituted one-half the purchase price for said leases. And it was agreed at the time that the McGinley Corporation should add to the amount paid by appellant a like sum of $4,500, making up the total consideration for said leases. But in truth and in fact the total consideration paid by the McGinley Corporation for said leases was the amount of $4,500. Concerning the diligence

used by appellant to discover the fraud perpetrated upon him, he alleges as follows:

"Cross plaintiff alleges that he repeatedly requested of the McGinley Corporation, William J. McGinley and H. J. Heartwell information from them as to the true cash consideration paid for said leases, but that they have at all times failed and refused, and have failed and refused to the date of the filing of their petition to so furnish this cross plaintiff with said information.

"Cross plaintiff alleges that not until certain depositions in this case were returned from Laredo, Texas, did he know what the actual consideration was for said leases; that had he known what the true consideration was that was paid for said leases, he would have demanded from the McGinley Corporation that it repay to this cross plaintiff his proportionate one-half of the purchase price of said leases, which money was had and received by the cross defendant herein from the cross plaintiff herein."

■■ In our opinion, this amended answer falls far short of the requirements of law in alleging fraud and the diligence used by appellant to discover same. The only diligence shown is the conclusion of the pleader that he made repeated requests of the McGinley Corporation, William J. McGinley, and H. J. Heartwell, for information as to the true cash consideration paid for said leases, and that they failed and refused to give him this information. The pleading does not state when he made the requests or how same were made, or of what the requests consisted. Moreover, these requests, if held sufficient otherwise, would not show diligence on the part of appellant, because it would hardly be expected that a diligent person seeking to find out in what respect he had been defrauded in the transaction would seek the information concerning the particulars of said fraud and deceit from the very persons whom he believed had perpetrated the fraud upon him. The pleading copied above does not state on what date the information concerning the fraud was received by him. He merely states that he learned the actual consideration paid for said leases on the date when certain depositions were received from Laredo. What that date was the pleading does not state. The pleading nowhere gives the date when the fraudulent acts of Wm. J. McGinley and H. J. Heartwell became known to him. The cross-action in this case was filed over three years after the alleged fraudulent acts were committed and hence is barred by the two-year statute of limitation. In the early case of Bremond v. McLean, 45 Tex. 10, it is said, "The mere statements in the petition that plaintiff could not have discovered that the alleged representations of defendant were false and fraudulent, by the use of reasonable diligence, evidently will not relieve him from the bar of the statute. If the want of such knowledge will prevent the running of the statute, it is not sufficient for the plaintiff to assert merely the conclusion that he could not have discerned that the representations made him were false, by the use of reasonable diligence, but he must state the facts upon which he relies, that the court may see whether they justify and support such a conclusion."

In McBurney v. Daughety (Tex.Civ. App.) 19 S.W.(2d) 113, 114, writ dismissed, it is said: "In Texas and most jurisdictions the 'statute runs from the time when the fraud is discovered, unless in the exercise of reasonable diligence it might have been sooner discovered.' 37 C.J. 929, § 299b, and cases cited in note 1. The rule is also well settled in Texas that, where one seeks to avoid the bar of the statute on the ground of the exercise of reasonable diligence to discover fraud, he must allege the facts upon which he relies, so that the court may determine from the pleadings whether he is entitled to the relief sought, assuming such allegations to be true."

Therefore we conclude that the pleadings of appellant in this case were insufficient on their face to toll the statute of limitation with respect to his allegation of fraud in the face of appellee's plea of limitation. Therefore we conclude that the trial court was fully justified under the law in instructing the jury to return a verdict in appellee's favor.

The judgment of the trial court is in all things affirmed.