## LOGAN v. TAYLOR.

No. 8673.

Court of Civil Appeals of Texas. Austin.

June 15, 1938.

Rehearing Denied July 13, 1938.

T. R. Johnston, of San Angelo, for appellant.

W. L. Scott, of Eden, for appellee.

BLAIR, Justice.

Appellant, T. R. Logan, sued appellee, C. H. Taylor, on his three vendor's lien notes payable to appellant and with interest aggregating $1,134.23, and to foreclose the vendor's lien securing the notes on Lot 19, in Block 3, and Lot 7, in Block 4, Glendale Addition to the City of Eldorado, Texas. Appellee admitted the execution of the notes and lien; but· by way of cross-action set up certain representations of appellant's agents alleged to have been fraudulently made for the purpose of inducing him to purchase the lots, pay as purchase price and interest thereon $310, and to execute the notes and lien in suit for the balance of the purchase price. Appellee prayed that the purchase contract be rescinded, that the lots be returned to appellant, and that he recover back the amount he had paid on the lots. Among other defenses to this cross-action, appellant pleaded the four-year statute of limitation, Vernon's Ann.Civ.St. art. 5529. The jury found all special issues submitting the fraud and the plea of limitation thereto favorable to appellee; and judgment was accordingly rendered for him as prayed; hence this appeal.

The cross-action to rescind the contract for the purchase of the lots on account of fraud inducing its execution was filed November 9, 1936. The claimed fraudulent representations were alleged to have been made in March, 1930, prior to the execution of the contract of purchase and·the notes and lien in suit, on March 31, 1930. And six years and more than seven months having elapsed, it was necessary for appellee to allege and prove facts which would toll the running of limitation for the excess period from March 31, 1930, to November 9, 1932; that is, appellee was required to allege and prove facts which would have excused an ordinarily prudent person from discovering the alleged fraud during the excess period in the exercise of reasonable diligence. This he failed to do as a matter of law. Appellee relied upon two separate and distinct grounds of fraud:

1. That appellee made known to the agents of appellant that he was purchasing the lots solely for the purpose of speculation and for making a profit thereon; that they represented to him that the lots in the addition were being sold out at a very low price and that every person who bought lots therein was bound to make a profit; that they sold to J. S. Lloyd a lot in the same addition and at the same price appellee was to pay for his two lots; and that Lloyd had sold within one year his lot to T. J. Jackson for enough profit to buy and pay for another lot in the addition; and that Jackson was going to immediately build an expensive residence on his lot which would greatly enhance the value of appellee's lots and would enable him to within a year make a nice profit thereon; and

2. That appellant was going to pave the streets with good substantial permanent pavement, plant trees. and shrubbery, and beautify the whole addition in which appellee's lots were situated, and thereby substantially increase their value and insure appellee a profit in the lots.

It was further alleged in connection with the two grounds of fraud that at any time appellee desired, appellant and his agents would sell the lots for him, and that he would not lose anything thereon. Appellee further pleaded that on March 31, 1931, when the first year's interest became due, that he asked appellant and his agents to sell the property for him; and that he was told that because of the financial conditions prevailing they could not sell for a profit; and appellee further alleged that he offered to take at the end of the year just enough to get his money out of the lots.

Appellee testified on the fraud issues that he went to Eldorado as manager of the telephone company about January 15, 1930, where he remained until 1934. A few days later the agents of appellant approached him seeking to sell the two lots in question for $1,600 or $1,700. He went with them and inspected the lots, and told them that he would not give anything like that for the lots, and would not pay more than $1,000 for them. The agents informed him that they would have to see appellant for authority to sell them at the reduced price; which they did, and a day or two later the sale of the lots was made. At the end of the first year, appellee requested Logan to either take the lots back, or sell them for enough to repay him. Appellant refused to do so, stating that the lots could not be sold because of the financial condition prevailing; and this evidence is undisputed. Appellee made no investigation of the truth of the statements with regard to selling a lot to Lloyd which he in turn sold for enough to pay for another lot. After he was sued in this case in 1936, he went to Eldorado, from which place he moved in 1934, and discovered that Lloyd had not purchased a lot and sold it for enough profit to pay for another lot in the addition; that Lloyd purchased two lots for $1,000 and sold one of them for $750 to Jackson. Appellee knew that Jackson did not erect immediately, or at any time, a residence upon the lot purchased by him.

The gravamen of appellee's charge of fraud was that he intended to purchase the lots in order to make a profit; and that it was represented to him that he would make a profit; that Lloyd, who had purchased lots in the addition, had made a large profit; and that he would not have purchased the lots but for these representations. He contended that a cause of action to rescind a contract for such deceit does not accrue until the fraud is actually discovered, unless in the meantime the fraud could have been discovered by the exercise of reasonable diligence. The actual discovery of the fraud is not necessary or essential to the accrual of such cause of action. Within one year after making the contract to purchase the lots under the representation that he would make a profit within a year, appellee discovered that he could not sell the lots for any profit, nor sell them at all. He also discovered that the promise of the agents of appellant that they would take the lots off of appellee's hands or sell them at any time appellee wanted them to do so would not be complied with. After the suit was filed,—more than six years after the above alleged failures of appellant to comply with his promises—appellee readily discovered in a short period of time that Lloyd had not purchased a lot and made enough profit to buy another lot in the addition; and he knew all along that Jackson had not built the house which the agents represented would be built immediately after March, 1930. These facts were sufficient to put appellee on notice of the truth or falsity of all representations in connection with the sale of the two lots to him. This brings the case clearly within the rule announced by this and other courts of this state, to the effect that actual knowledge of fraud is not required, but that reasonable diligence must be exercised to discover the fraud; and knowledge of facts sufficient to put one upon inquiry will operate as notice of the fraud. Steele v. Glenn, Tex. Civ.App., 57 S.W.2d 908; Kana v. Baumgarten-Matula Co., Tex.Civ.App., 88 S.W. 2d 1079; Lindsey v. Dougherty, Tex.Civ. App., 60 S.W.2d 300; Braddock v. Brockman, Tex.Civ.App., 49 S.W.2d 908; Carver v. Moore, Tex.Com.App., 288 S.W. 156.

Appellee contends, however, in this connection that he alleged in his pleadings and offered proof tending to show that prior to March 31, 1930, he had known and reposed great trust and confidence in appellant, so much so that on or prior to that date he likewise reposed great confidence in the business associates of appellant, who made the representations to him concerning the value of the lots and the profits he would make out of them, as well as the other representations concerning the sale of a lot by Lloyd to Jackson, and that Jackson was going to build a fine residence on the property which would enhance the value of appellee's lots. This allegation amounted to nothing more than a general conclusion of the witness that he reposed great confidence in the person from whom he purchased the lots; and that because he did so he believed the representations of anyone who was connected with the person as a business associate. Such is a mere conclusion of the pleader and alleges no fact, business transaction, or other incident showing any confidential relationship existing between them. He testified that he had

never had a business transaction with appellant; that he had known him for many years, but that no confidential relationship or fiduciary relationship had ever existed. The law is settled that, "when there is no fiduciary relationship, the mere fact that one person has confidence in another does not excuse lack of diligence in investigating; hence confidence reposed by one party to a contract in the performance by the other party of his obligation will not toll the statute in favor of the party reposing the confidence. Nor does the fact that a confidential relationship existed excuse one who has been guilty of negligence or laches in the enforcement of his right." 28 Tex.Jur., p. 162, § 73, and cases there cited.

■ Since appellee neither alleged nor proved any fact or facts which would toll the running of the statute of limitation against his cause of action for rescission of the contract on the ground of fraud alleged, we do not deem it necessary to discuss the numerous questions raised on this appeal by appellant. Appellant urgently insists, however, that under the undisputed evidence no fraud was shown with regard to the representations made by appellant's agents. We are inclined to this view; but since the cause is barred by limitation, it is not necessary to discuss the issues at length. Suffice it to say that appellee bought the property at the price fixed by himself after he had investigated and seen the property. He bought it to make future profits, which cannot be foreseen or prophesied accurately, and are speculative. No basis was shown by which such profits could have been ascertained at a future date. If Lloyd had made a profit in good times on his lot, that could have been no basis upon which appellee could predicate future profits on his lots in depression times. And the evidence is undisputed that the failure of appellee to realize profits was due in a large measure to the great financial depression that began in 1930. Schilder v. Fort Worth Nat. Co., Tex.Civ.App., 81 S.W.2d 247; Lloyd v. Junkin, Tex.Civ.App., 75 S.W.2d 712; Davidson v. Commercial Nat. Bank, Tex. Civ.App., 59 S.W.2d 949..

The undisputed evidence showed that all improvements which appellant was to make in the addition were made; and that appellee's evidence wholly failed to show how he had been injured by reason of the fact that some of the improvements did not last; and he did not allege the character or kind of improvements that were to have been made. Wagner v. J. B. Colt Co., Tex.Civ.App., 234 S.W. 934; Hogan v. W. H. Norris Lumber Co., Tex.Civ.App., 90 S.W.2d 585.

The judgment of the trial court is reversed and judgment is here rendered for appellant for the balance due on the three notes, together with interest and attorney's fees, and for foreclosure of the vendor's lien securing the notes on the lots in question, as prayed.

Reversed and rendered.

On Appellee's Motion for Rehearing.

In overruling appellee's motion for rehearing, we state that our conclusions that the "alleged" fraud should have been discovered and that no fraud was proved are not inconsistent conclusions, but are alternative conclusions. That is, if the fraud alleged were committed, appellee did not allege nor prove facts tolling the statute of limitation as against the cause of action for such fraud; and in the alternative we conclude that the facts proved did not show fraud.

■ In addenda to the motion for rehearing, appellee contends that since he alleged that appellant agreed to take the lots off his hands and to resell them, and since such contract required demand as prerequisite to action thereon, limitation against such action runs from date of demand and refusal. Even so, the date of the demand alleged was March, 1931, and appellant refused to comply, stating that he had no such agreement, but that he would "be glad to sell them, but didn't feel that there was a market for them." This demand and refusal was more than five years prior to the filing of this suit, and it was therefore barred by limitation.

Overruled.