John H. WHITE, Petitioner,

v.

Paul BOND et al., Respondents.

No. A–9001.

Supreme Court of Texas.

Nov. 21, 1962.

White & White, Guy Hazlett, Walter R. Allen, Borger, for petitioner.

Linn & Helms, Spearman, for respondents.

CULVER, Justice.

The respondents, Paul Bond, R. C. Jinkins, J. L. Harris and Mrs. Ruby Smith, separately sued the petitioner, White, under Art. 4004, Vernon's Annotated Civil Statutes, for damages based on certain fraudulent misrepresentations that induced them to purchase stock in a proposed uranium mining corporation. These suits were consolidated, and a jury verdict was returned for both actual and exemplary damages in favor of all respondents. Judgment was entered accordingly, and on appeal the judgment was affirmed. Tex.Civ.App., 355 S.W.2d 225.

 The Court of Civil Appeals held on the principal point raised here that the testimony does not show as a matter of law that suits were filed more than two years after the discovery of the fraud or when, by the exercise of due diligence, they should have discovered it and that since White failed to request an issue on the limitation question it was therefore waived. It is our view, that both by their pleadings and evidence, it is shown conclusively that the respondents, Jinkins, Smith and Harris, more than two years prior to the institution of their suits, had knowledge of such facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud. Knowledge of such facts is in law knowledge of the fraud itself. Wise v. Anderson, Tex., 359 S.W.2d 876 (1962); Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R.

263. Glenn v. Steele, 141 Tex. 565, 61 S.W. 2d 810. Therefore, as to these respondents, the trial court should have instructed the jury against them.

In their pleadings the respondents alleged "that plaintiff did not discover the fraud alleged until on or about September 15, 1958, some five months prior to said date plaintiff became suspicious of defendant's action and began an investigation which was finally completed on or about said date". Their suits were filed in August of 1960. White pleaded the two-year statute of limitations.

The respondents alleged that the misrepresentations that induced them to purchase the stock were made in July of 1955, but nowhere in their pleadings did they assert that the falsity of those representations could not have been earlier ascertained by the use of reasonable diligence or state any facts that would justify and support such a conclusion. Bremond v. McLean, 45 Tex. 10; Cohen v. Shwarts, Tex.Civ. App., 32 S.W. 820 (1895), no writ history; Logan v. Taylor, Tex.Civ.App., 118 S.W.2d 1094 (1938) no writ history.

The representations which the jury found to have been made falsely and upon which the respondents relied, were as follows: that White had good title to the mining claims in question; that "this was a big group with people all over the country in it and that it had businessmen, mining men, geologists and other specialists in charge of various phases of management"; and that this was "good stock". Incidentally the jury found that White did not falsely represent that the mining claims were located in an area of good uranium potentialities.

The testimony of the respondents showed that either at or shortly after their purchase of this stock they had heard of the existence of a lawsuit questioning White's title to these uranium claims and in September or October of 1957 they learned from him that he had expended $2750.00 in settlement of this lawsuit. In fact one of the respondents testified that he learned a few months after his purchase that the suit had been settled. It is also undisputed that respondents knew in 1957 that the stock was worthless and that the corporation was insolvent.

In June of 1958 respondents filed a motion to take the deposition of White in order to perpetuate his testimony for the purpose, as stated, to see if White had done away with respondents' money in a manner not authorized. Respondents were suspicious that he might have misappropriated some of their money. The deposition is not before us and so far as we are able to ascertain, there is no testimony as to what they discovered in White's deposition except as to how the funds were expended. Of course they already knew that some of the proceeds from the sale of stock had been used by White to clear the title to his uranium claims and on learning that they were upset and dissatisfied. Thus more than two years before the filing of these suits these three respondents knew that White did not have good title to his mining claims and that the stock was not good.

So far as the representation made by White that there were businessmen and geologists from all over the country interested in this venture is concerned, the evidence does not disclose that there was ever any attempt on the part of these respondents to make any inquiry of White or of anyone else as to who these people were or the character of their interest. From time to time they had a number of meetings with White after suspecting that he had misrepresented the facts and by the exercise of reasonable diligence they could have ascertained the truth or the falsity of that representation.

We therefore hold that the claims of respondents, Jinkins, Smith and Harris are barred by the two-year statute of limitations. Art. 5526, Vernon's Annotated Civil Statutes.

The respondent, Bond, filed his suit on September 28, 1959, almost a year ear-

lier. It is not so clear as it is in case of the other respondents that his suit was barred by the statute of limitations as a matter of law. However, in either event Bond is precluded from recovery in view of our holding on the second point.

Respondents have failed to prove damages in accordance with the measure laid down in Art. 4004 under which they brought their suit.

The jury was required to find the amount of actual damages suffered by reason of the purchase of the stock and were instructed that the term "actual damages" means the difference between the value of the stock as represented and the actual value of the stock. The jury in answering that question assessed the damages to each respondent in the amount paid for the stock. Obviously, before the difference can be ascertained, the value of the stock as represented and the actual value must be found. From all the testimony the jury might well infer that the shares of stock had little or no value at the time of the purchase but the record is wholly silent as to what value the stock would have had if the representations had been true. So the findings of the jury are wholly speculative.

In Bryant v. Vaughn, Tex., 33 S.W.2d 729, we said:

"In order for a party to recover the measure of damages provided by the above statute [Art. 4004], it is essential that he allege and prove the value of the property received, if it had been as represented, and its actual value in the condition in which it was delivered at the time of the contract, the difference between such value constituting the measure of damages."

See also Sibley v. Southland Life Ins. Co., Tex., 36 S.W.2d 145 (1931); Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107; Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730 (1944).

We recognize the problems confronting the respondents in attempting to prove the value of the stock had the representations been true, but that does not supply the want of necessary evidence. Had they chosen to sue for rescission of their contracts their pathway would not have been strewn with such difficulties. But since they brought their action under Art. 4004 to be successful they must comply with the rule of damages therein prescribed.

Evidently White did have good title to the claims subject to the cloud cast on his title by the lawsuit brought by other parties. That lawsuit, however, was compromised and settled by the expenditure of some $2750.00 on January 4, 1956. It appears that White had successfully defended this suit in the trial court, and the compromise was effected after the losing parties had taken an appeal. Naturally the capital assets of the corporation were reduced in this amount, but that fact does not tend to prove what the stock of the respondents would have been worth had this suit been disposed of before they made their purchase. One of the false representations asserted by respondents in their petition was that "the money obtained from plaintiff would only be used to develop the claims", but this complaint was dropped and not submitted to the jury.

The other two representations found by the jury to have been false were rather vague and indefinite and could hardly form the basis for any proof as to value of the stock, namely, that White had represented that a number of business and professional men whose names were unknown and undisclosed, were associated with him in this promotion and that it was "good stock". There was testimony to the effect that White had stated to the respondents that they were being let in on the "ground floor" at one cent per share and at some time in the future the stock would be offered for sale to the public at ten cents per share and further that the respondents could reasonably expect at any time to get three or four cents per share. This testimony, however, does not tend to prove the value of the stock nor is it one of the alleged misrep-

298

resentations upon which the jury found that the respondents relied. Actually all the evidence indicates that this was a wholly speculative promotion on which the respondents hoped to reap large profits which unfortunately and, is so often the case, failed to materialize.

For the reasons above assigned we hold that the respondents are not entitled to recover damages in this case. The judgments of the trial court and that of the Court of Civil Appeals are reversed and judgment here rendered in favor of the petitioner.

GRIFFIN, J., not sitting.