EMPLOYERS MUTUAL LIABILITY IN-
SURANCE COMPANY et al., Appellants,

v.

Jack MURPHY et al., Appellees.

No. 4255.

Court of Civil Appeals of Texas.

Eastland.

Oct. 25, 1968.

Rehearing Denied Nov. 22, 1968.

Shaw, Davis & Davey, Tom Shaw, Harvey L. Davis, Dallas, for appellants.

Thompson, Knight, Simmons & Bullion, Daniel R. Rogers, Dallas, for appellees.

COLLINGS, Justice.

Employers Mutual Liability Insurance Company of Wisconsin and Farmers Elevator Mutual Insurance Company brought this suit against Jack Murphy, Affiliated Companies of America, Inc., International Reinsurance Agency, Inc., a general agency, and Ellison Miles, seeking to recover damages for losses in the amount of approximately one-half million dollars alleged to have been suffered by plaintiffs because of fraudulent and false representations by the defendants, their agents, servants, employees or partners. Plaintiffs alleged that such false and fraudulent representations were made to them in March and April of 1963 by one Francis Savage, who at the time was acting as the agent, servant, employee or partner of the defendants and particularly of the defendant, International Reinsurance Agency. Plaintiffs alleged the details of defendants' fraudulent actions which were complicated and involved, asserting that defendants furnished to plaintiffs false and inaccurate loss ratio experience information for the years 1959, 1960, 1961 and 1962, with the purpose of inducing plaintiffs to enter into reinsurance contracts relative to school child insurance business for the years 1963 and 1964; that plaintiffs, relying upon the truthfulness of defendants' material representations concerning their past loss ratio

experience with other reinsurers, entered into such reinsurance contracts and as a result thereof suffered the damages here complained of. Plaintiffs further alleged that the defendants thereafter continued to conceal such false and inaccurate loss ratio insurance experience information, and that plaintiffs had no knowledge or information concerning facts that would have caused them, as ordinarily prudent insurers, to question the truthfulness of the information originally furnished them by defendants until on or about September 5, 1965. The defendants denied plaintiffs' allegations and, among other defenses, pleaded the two year statute of limitations.

A motion for summary judgment was filed by the defendants. They asserted therein and presented affidavits and exhibits showing that plaintiffs had knowledge by December, 1964, by January, 1965, and by February, 1965, that the loss ratio in defendants' school child accident insurance business for the 1963–1964 school years greatly exceeded the false ratio experience information furnished by defendants to plaintiffs for the years 1959–1962 inclusive; that reports were in the hands of plaintiffs as early as December, 1964, showing that the loss ratio for the school year 1963–1964 was 84%; that in January of 1965, Savage verbally confirmed to both plaintiffs that the school year 1963–1964 was a disastrous loss year, and that in February of 1965 Savage confirmed in writing to both plaintiffs that school year 1963–1964 was a disastrous one. Defendants asserted in their motion for summary judgment that said information, as a matter of law, charged plaintiffs with knowledge on those dates that the loss ratio information furnished by defendants for the years 1959–1962 inclusive, was false and that since plaintiffs' suit was not filed within two years thereafter it was barred by the two year statute of limitations. The motion for summary judgment was granted and plaintiff insurance companies have appealed.

In appellants' first 3 points it is contended that the court erred in sustaining appellees' motion for summary judgment because, appellants contend, such motion, the attached affidavits, exhibits, and the pleadings fail to show that there is no genuine issue as to any material fact in the case; that on the contrary the pleadings, depositions and affidavits on file affirmatively show that there are genuine issues of fact as to whether appellants more than two years before suit was filed, received information under circumstances sufficient to put them on notice or inquiry to discover that appellees had misrepresented material facts for the purpose of inducing them to enter into the reinsurance contracts. Appellants contend and correctly so, that the record is undisputed that they filed their suit within a period of two years after having actual knowledge of the fraud. The record is further undisputed that appellants did not file suit within a period of two years after obtaining knowledge of the 84% loss ratio for 1963–1964. Appellants contend, however, that there is a genuine issue of fact as to whether such knowledge would have caused a reasonably prudent insurer in the exercise of ordinary diligence to make inquiry, which if pursued, would have led to the discovery of an alleged fraud.

Appellants' 4th, 5th and 6th points urge that the affidavits and exhibits filed in support of appellees' motion for summary judgment are fatally defective and constitute no proof upon which to base a summary judgment. Even if we assume, without deciding that these points are without merit and that such affidavits are properly considered in support of the judgment, we are nevertheless of the opinion that appellants' first three points are well taken, and this requires that the judgment should be reversed and the cause remanded. Appellants' petition as plaintiffs filed in April, 1967, and appellees' motion for summary judgment and the affidavits and exhibits on file show that appellants seek to recover damages suffered by them because

of alleged misrepresentations made in the early part of 1963 by one Savage concerning appellees' loss ratio experience in the student accident insurance business for the years 1959 through 1962; that Savage was the partner, agent or employee of appellants and acted in the course of his employment; that he falsely represented to appellants, in effect, that the loss ratio average for the period was 68.8%; that the correct average ratio for the period in question was 90.3%; that the fact of the actual 90.3% loss ratio for such period was concealed from appellants, and the falsity of appellees' representations was unknown to them until about September 5, 1966.

" * * * the mere fact that the defrauded person has the opportunity or power to investigate and discover the fraud is not sufficient to charge him with notice or knowledge so as to start the running of the statute of limitations." 54 C.J.S. Limitations of Actions § 191, P. 197. We cannot agree with appellees' contention that appellants' knowledge in December of 1964, and in January and February of 1965, that the loss ratio for the school year 1963–1964 was a disasterous 84%, which exceeded the representations made to them in the early part of 1963, concerning the loss ratio experience for 1959 through 1962, as a matter of law, charged appellants on those dates with knowledge of the falsity of the loss ratio information furnished to appellants for such prior years. The representations made to appellants concerning appellees' loss ratio experience averaging 68.8% for the years 1959 through 1962 indicated a different loss ratio for each school year period covered, that is, 77% for the school year 1959–1960, 62.5% for the year 1960–1961, and 67% for the year 1961–1962. Such false representations thus indicated a variance of over 14% between the highest and the lowest loss ratio experience for such school years as represented to appellees. The 84% loss ratio for the school year 1963–1964 was only 7% above the falsely represented loss ratio for the school year 1959–1960. In our opinion appellants' knowledge concerning the 84% loss ratio for the school year 1963–1964 was not a conclusive showing that they should have discovered appellees' fraud before the expiration of two years from the time of acquiring such knowledge. Such knowledge, at most, raised only a material fact issue in the case. The fact issue is whether such knowledge would have caused a reasonably prudent insurer, in the exercise of ordinary diligence to make inquiry which, if pursued, would have led to the discovery of the fraud which is the basis of appellants' suit. Since there is a material issue of fact in the case the court erred in rendering summary judgment.

The judgment is reversed and the cause is remanded.