Martin Dies BUSH, Appellant,

v.

Don STONE et al., Appellees.

No. 784.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 31, 1973.

Rehearing Denied Nov. 15, 1973.

Servando H. Gonzales, Jr., Judin, Ellis, Gonzales & Barron, McAllen, for appellant.

Gordon L. Briscoe, Harlingen, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit based on fraud. The plaintiff alleged that the defendant and his employees by the use of a fraudulent scheme deprived him of $124,191.23. Summary judgment disposed of plaintiff's suit against the employees. No appeal was had from the summary judgment. The defendant alleged, by special exception, that plaintiff's suit was barred by the two and four years statute of limitations, by laches and because plaintiff's petition did not allege any facts that would tend to show the existence of a fiduciary relationship between the plaintiff and the defendant. The trial judge sustained all the special exceptions, dismissed plaintiff's suit with prejudice, and held that as a matter of law plaintiff had failed to allege a cause of action.

■ Where a trial court has sustained defendant's exceptions and has dismissed plaintiff's case on the grounds that he has failed to allege a cause of action, we must follow the familiar rule that requires us to consider that all of the facts alleged by plaintiff are true. In determining whether the action by the trial court was erroneous, we must in addition consider all of such allegations and the inferences that could reasonably arise therefrom which would tend to establish a cause of action or give rise to an issue of fact that should be determined by a jury. See Wheeler v. White, 398 S.W.2d 93 (Tex.Sup.1965).

The plaintiff was a farmer in Willacy County. The defendant was also a farmer and was the owner of the Willamar Gin located in Raymondville. The plaintiff and defendant became close personal friends beginning in 1939 and remained as such for the next 26 years. The plaintiff trusted the defendant the same as if he were a member of his own family. In fact, plaintiff's older brother lived for many years in defendant's father's home. On at least one occasion the plaintiff

stayed the entire summer in the defendant's father's home. The plaintiff and defendant had repeated business contacts throughout the years. They hunted, visited, and had repeated social contacts together. The defendant on several occasions invited the plaintiff to hunt with him on a special hunting lease at the Yturria Ranch, as well as other places.

On or about the 1st day of September, 1956, the plaintiff and defendant entered into an oral agreement whereby the defendant agreed to gin and process all of plaintiff's cotton and grain raised by him. This arrangement was to continue and remain in effect until terminated by mutual agreement. Under the terms of the agreement plaintiff was to turn over to the defendant all of the produce from his land for process and sale. The defendant was to pay plaintiff the current market price for every bale of cotton and pay the then current market price for grain.

The plaintiff owned 276 acres known as "Postas Blancas" which he was purchasing. Additionally, he farmed as a tenant two 800 acre tracts. Under the agreement the defendant was to make all of the purchase money payments on plaintiff's "Postas Blancas" farm for the plaintiff; pay plaintiff's landlords the amount due on the rented farm tracts; and make personal money advances to the plaintiff for plaintiff's personal living expenses and farming expenses. The defendant agreed to take over all of the bookkeeping chores necessary in connection with the agreement and to render an accounting to the plaintiff at the end of each farming year showing the amount produced, the total amount of proceeds received, and the expenses and the disbursements made.

The defendant received all of the proceeds from the sale of plaintiff's grain and cotton, and rendered an accounting showing all the receipts and disbursements. Additionally, the defendant obtained and guaranteed loans made for the benefit of the plaintiff and received the proceeds from such loans. The proceeds from such loans were disbursed by the defendant and his agents.

In connection with the plaintiff's farming operation the defendant paid all of the farming expenses and at the end of the year the defendant provided the plaintiff with an accounting said to be true and correct in all particulars. This relationship continued from 1956 until 1965. During this period, the defendant made all of the payments in connection with the plaintiff's purchase of the "Postas Blancas" tract to Bryon Campbell. These payments were made to Campbell by the defendant from 1956 until 1965. In 1969, Campbell's administrator notified plaintiff of a discrepancy in the payment of the note. Plaintiff asked the defendant to provide him with the necessary information to determine the total amount paid on the note. This the defendant refused to do. It was then that plaintiff discovered that the 1956 payment in the amount of $2,509.90 due on the purchase of his farm had not been paid by the defendant. At that, he and his wife became suspicious. Plaintiff's wife went to the gin when the defendant was not there and, through the aid of the gin personnel, conducted an audit of the books and records making copies of all of the records pertaining to plaintiff's operation with the defendant. As a result of his audit, plaintiff discovered the secret fraudulent scheme that defendant had perpetrated against him.

The annual accountings which were furnished by the defendant were prepared very carefully so that they did not show that any fraudulent scheme existed or that the plaintiff would in any way become suspicious or otherwise be put on inquiry as to the fraudulent withholdings of plaintiff's money.

Plaintiff after receiving each yearly accounting would compare the cost of picking the cotton to the number of bales sold. The result would show that the average picking cost when compared to the number

of bales of cotton, would prove reasonable. Upon the audit, however, it was discovered that the defendant withheld and appropriated a portion of plaintiff's cotton and did so by a device and scheme which was difficult to detect. This was accomplished by the defendant by using his own picking crews and having the cotton delivered directly to the gin where the cotton picking expense was paid for by the defendant. The defendant then only charged the plaintiff the amount of cotton picking expense that would reasonably compare with the number of bales that defendant accounted for. In connection with the grain, the defendant employed independent contractors to harvest the plaintiff's grain and accounted to plaintiff for what he said was the total yield in pounds of grain received. When in truth and in fact the defendant appropriated some of the grain to his own use. Plaintiff in checking the accounting of the grain, compared it with his experience in previous years. He found that the comparable yield that was represented to him by the defendant as correct was not unreasonable when compared to the previous year yields.

The plaintiff relied upon the reports in the annual accountings furnished by the defendant and did not discover the shortages until informed of the discrepancy in the land payment by his grantor-mortgagee. The plaintiff then acted promptly and thereafter discovered the fraudulent scheme perpetrated on him by the defendant. This suit was filed shortly after the actual discovery of the fraud.

■ The law is clear that fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence it might have been discovered. Knowledge of facts that would have excited inquiry in the mind of a reasonably prudent person, which if pursued by him with reasonable diligence would lead to the discovery of fraud, is equivalent to knowledge of the fraud as a matter of law. Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1943); Wise v. Anderson, 359 S.W.2d 876 (Tex.Sup.1962). Where the statute of limitations have been plead and one seeks to avoid the bar of the statute, he must allege facts on which he relies so that the Court may determine from the pleadings whether he is entitled to the relief sought assuming the allegations to be true. 37 Tex.Jur.2d Limitation of Actions, § 203, p. 393. If from the facts alleged, the Court can say that as a matter of law, the plaintiff by the exercise of reasonable diligence could have discovered the fraud within such time as his action would have been barred before the suit was filed, his petition is subject to the exception. However, the Court is not authorized to deny the plaintiff's cause of action unless the plaintiff's petition conclusively shows that it is so barred. Ruebeck v. Hunt, 142 Tex. 167, 176 S.W.2d 738 (1943); Dannheim v. Mangum, 498 S.W. 2d 224 (Tex.Civ.App.—Beaumont 1973).

■ If assuming that all of the above facts alleged by plaintiff are true and that reasonable minds could differ as to the extent of their applicability, then the question as to whether the plaintiff exercised that degree of diligence that the law requires is one of fact for the jury and not a question of law for the Court to decide. The mere fact that the plaintiff had the opportunity or power to investigate the fraud, is not sufficient in law to charge him with knowledge. The defrauded party must be cognizant or aware of facts as would have caused the ordinarily intelligent and prudent man to investigate. Ruebeck v. Hunt, supra; Isaacks v. Wright, 50 Tex.Civ.App. 312, 110 S.W. 970 (1908, writ denied); Edsall v. Edsall, 238 S.W.2d 285 (Tex.Civ. App.—Eastland 1951, writ ref'd n. r. e.).

■ We believe that the plaintiff has alleged sufficient facts which taken most favorably toward his case, shows that he was not aware of the fraud, nor was he required to investigate further than he did. His entire harvesting operation was controlled by the defendant. The cotton and

grain were sold to and through the defendant's company. The defendant acted as plaintiff's bookkeeper, accountant and money lender. The inquiry made by the plaintiff showed that the accounting he received appeared to be reasonable. As to the picking of the cotton, it appeared to be correct when tested by the total number of bales reportedly sold and the expense reported. The total yield from the grain crop, approximated the yield of the previous years. Under these circumstances it was reasonable for the plaintiff to believe that the defendant was giving him a true accounting of the proceeds of his crops. The system devised by the defendant was a closed circle (harvesting, selling, accounting and payment), which the plaintiff alleges was completely controlled by the defendant. These allegations do not show that "as a matter of law" that the plaintiff had knowledge of facts that would have required him to make further inquiry. Employers Mutual Liability Insurance Co. v. Murphy, 434 S.W.2d 246 (Tex.Civ.App. —Eastland 1968, n. r. e.).

There is another reason why the trial court should not have dismissed plaintiff's suit. The discovery rule previously discussed is to be used primarily in "arm's-length transactions". Edsall v. Edsall, supra. A different and more lenient standard is applied to one who has been defrauded where a fiduciary relationship exists between the parties. Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197 (1957); Trinity-Universal Ins. Co. v. Maxwell, 101 S.W.2d 606 (Tex.Civ.App.—Austin 1937, writ dism'd). Under the facts of this case as alleged, the relationship between the plaintiff and defendant was not an arm's-length transaction, nor was it exactly a transaction where a purely technical fiduciary relationship exists. The fraud was not apparent on its face that made it so obvious that the fraud should have been discovered as a matter of law. See Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962). The courts

hold a person to a certain standard of diligence when protecting his own business affairs in an arm's-length transaction, but the diligence required in discovering the fraud, depends on the relative circumstances and the relationship of the parties, expecially where a condition of trust exists between the parties. Such relationship ". . . may arise informally from 'moral, social, domestic or purely personal' relationships. (citing authority) The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." Thigpen v. Locke, supra. Where the fiduciary relationship exists or an issue of fact on this question is present, diligence on the party defrauded does not exact as prompt and as searching an inquiry into the conduct of the other party as where the parties were strangers or were dealing with strangers. Eastman v. Biggers, 434 S.W. 2d 439 (Tex.Civ.App.—Dallas 1968). The mere fact that the defrauded party has the opportunity or power to investigate the fraud, is not sufficient to charge him with notice or knowledge of the fraud, so as to start the running of the statute of limitations. The question of the knowledge is a fact issue. Where there is a relationship of trust or confidence, the law seems to impose upon the defendant the duty to make a full disclosure of the facts so that the fraud may be discovered. If he doesn't do this, it has been held that the rule requires actual notice of the fraud before the limitation statute is set into motion. Franklin County v. Tittle, 189 S.W.2d 773, 775 (Tex.Civ.App.—Texarkana 1945, writ ref'd).

In the case before us the parties' relationship extended for a long period of time (in excess of 26 years). They worked together, they had repeated business contacts, and were close family-type friends. In the present case the defendant acted in one sense as a banker and a partner for the plaintiff. He obtained and guaranteed loans for him. The defendant collected

funds. He held them in a "trust" [1] type relationship for later disbursement. He acted as plaintiff's agent in receiving money from the sale of cotton and grain and upon plaintiff's order disbursed payments to plaintiff's mortgagee and other creditors. The Supreme Court clarified the notice rule as it applies to fiduciary relationship and summarizes what we have said, when it stated that:

"It is perhaps more accurate to say that the existence of a relation of trust and confidence does not change the rule that diligence in discovering the fraud is required but it does affect the application of the rule. (citations omitted) By entering into fiduciary relations, the parties consent as a matter of law to have their conduct measured by standards of finer loyalties exacted by the courts of equity. (cites omitted) The fiduciary relationship is therefore one of the circumstances to be considered in determining whether fraud might have been discovered by the exercise of reasonable diligence. *It may excuse the defrauded party from taking action that would be required in an arm's-length transaction or from making as prompt or searching investigation as might otherwise be expected. In some situations there is no legal duty to use means available for discovering the fraud, . . .*" (Emphasis added)

Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197, 205 (1958). This rule is followed today in Texas and in a number of decisions nationwide. Thigpen v. Locke, 363 S.W.2d 247 (Tex. Sup.1962); Eastman v. Biggers, 434 S.W. 2d 439 (Tex.Civ.App.—Dallas 1968, no writ hist.); see also, 26 Tex.Jur.2d Fraud and Deceit, § 88, p. 33; 54 C.J.S. Limitations of Actions, § 189, p. 188; 45 A.L.R. 3rd 631 (1972).

[16] The defendant contends that he appropriated approximately from 12% to 35% of the proceeds in each of the years involved and that the means were at hand for the plaintiff to discover the fraud had he used diligence and had he made an inquiry as he did on the occasion when the fraud was actually discovered. Where, as here, a party is guilty of an affirmative fraudulent misrepresentation of a fact, he should not be permitted to urge that the defrauded party could have discovered the truth had he diligently made an investigation. Trinity-Universal Ins. Co. v. Maxwell, 101 S.W.2d 606, 611 (Tex.Civ.App.— Austin 1937, writ dism'd). In all cases of embezzlement or concealed fraud it becomes very obvious that a wrong doing has taken place after the fraud has been discovered. But where you have a trusting relationship it is hard to discover the fraud and harder yet to believe. But this is not the question that is before the Court. The question is whether this plaintiff has used the necessary diligence to discover the fraud when tested by the relative circumstances and conditions of the parties and the particular facts surrounding this case.

We believe the situation in this case was appropriately stated in 54 C.J.S. Limitations of Actions § 189, p. 193.

"What Amounts to Discovery of Fraud; Necessity for Diligence or Concealment": (at p. 193) where it is said that: "The courts will not lightly seize on some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him, on the ground that he did not discover the fact that he had been cheated as soon as he might have done; it is only where the party defrauded should plainly have discovered the fraud except for his inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on the subject."

In Hogan v. Hidalgo County, 246 S.W. 2d 709 (Tex.Civ.App.—San Antonio 1952)

1. See definition of "trust"—Black's Law Dictionary, 4th Edition.

in an opinion by Chief Justice Murray the Court said:

"We are of the opinion that defendants could invoke the negligence of the county commissioners in failing to discover Powell's fraud *only after they had knowledge of such facts,* or notice of other facts which would have excited inquiry in the mind of a person of ordinary prudence that, if pursued with reasonable diligence, would have led to a knowledge of such defalcation, and that appellants are in no position to invoke in behalf of their plea of limitations the negligence of the county commissioners in a failure to perform their statutory duties in the absence of some facts amounting to notice of such defalcation." (emphasis supplied)

There are four things plead by the plaintiff which taken as true, establishes a fact or an inference of fact giving rise to a confidential relationship that should be resolved by a jury. They are: 1) prior business contacts; 2) the banker-client type relationship; 3) the principal and agent and trust type relationship; and 4) the close friendly family-type ties.

The appellee places great emphasis on what the plaintiff failed to plead. This is not the question at all where the trial court has dismissed plaintiff's suit. The question that must be resolved on a subsequent trial is whether the facts that are pleaded, (taken as true) and the reasonable inferences obtained therefrom, entitles the plaintiff to a trial on the merits when faced by the plea of limitations by one who has defrauded him.

We hold that the plaintiff has met at least the minimum burden of answering the statute of limitations by the facts pleaded. We believe the plaintiff deserves a trial on the merits. The judgment of the trial court is accordingly reversed and the cause is *remanded for trial.*

Reversed and remanded.

BISSETT, Justice (dissenting).

I respectfully dissent. It affirmatively appears from the face of the petition which was filed by Martin Dies Bush, plaintiff, against Don Stone, defendant, that the cause of action asserted by plaintiff is barred by the two-year statute of limitations. Therefore, when plaintiff did not amend his pleadings, though given an opportunity to do so, the trial court properly dismissed the case.

As I read plaintiff's petition, there are no allegations therein that will support a finding, inference or conclusion that the business relationship occasioned by the oral agreement that was made on or about September 1, 1956 continued "from 1956 until 1965", as said by the majority on page 3 of its opinion. Plaintiff alleged that he and defendant became "close personal friends during the years 1939 through 1965", that "pursuant to said agreement" he delivered his harvests to defendant for the years "1956 through 1961", and that defendant "maintained complete control and possession of the bookkeeping from September 1, 1956 through September 30, 1961". I conclude from those averments that the relationship between plaintiff and defendant which resulted from the agreement did not extend beyond September 30, 1961, and that their friendship ceased at the end of the year 1965. In my opinion, the relationship between plaintiff, according to the pleadings, was an arm's-length relationship, not a relationship of trust and confidence.

The alleged frauds occurred during the period that commenced on September 1, 1956 and terminated on September 30, 1961. Suit was filed on December 14, 1970, more than nine years after the last fraud was committed, and almost five years after the friendship between plaintiff and defendant had ceased. Therefore, without more, plaintiff's asserted cause of action was clearly barred by limitations. Plaintiff alleged that he did not discover the frauds until the fall of 1969, when his wife inspected defendant's books and

records insofar as they related to plaintiff's farming operations for the years 1956 through 1961. But, as will hereafter be noted in some detail, only in the most general terms does plaintiff allege the diligence exercised by him to discover the fraud charged to have been practiced on him by defendant. Such allegations are, in my opinion, insufficient to meet the requirements of the rules of pleading in a case where the action is grounded upon fraud because of misrepresentation. As I view the petition, plaintiff's cause of action accrued and limitations began to run, not from the time the frauds were actually discovered, but from the time the frauds might have been discovered by the use of reasonable diligence. Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319 (1941); Kuhlman v. Baker, 50 Tex. 630 (1879); Carver v. Moore, 288 S.W. 156 (Tex. Comm'n App. 1926).

An analysis of the allegations contained in plaintiff's petition respecting the alleged shortages of cotton for each of the years in question reveals:

| Year | Bales Produced | Bales Reported | Shortage | Money Claimed |
|---|---|---|---|---|
| 1956 | 553 | 358 | 195(35%) | $32,943.30 |
| 1957 | 696 | 611 | 83(12%) | 14,735.60 |
| 1958 | 800 | 693 | 107(14%) | 15,334.08 |
| 1959 | 1,117 | 981 | 136(12%) | 23,460.00 |
| 1960 | 596 | 489 | 107(18%) | 16,455.83 |
| 1961 | 230 | 199 | 31(14%) | 4,718.20 |

Grain was planted and harvested in only two of the years, 1960 and 1961. Plaintiff did not allege the production figures nor the alleged shortages in pounds or any other unit of measure for the acreage planted in grain. Instead, he simply stated that for the year 1960, defendant did not credit him for the grain produced from 114 acres, to his damage in the sum of $4,206.60, and that for the year 1961, defendant did not credit him for the grain produced from 185 acres, to his damage in the sum of $10,027.72.

Our Supreme Court, in Courseview, Inc. v. Phillips Petroleum Co., 158 Tex. 397, 312 S.W.2d 197 (1957), speaking through Mr. Justice Walker, has clearly stated the rules applicable to the beginning of the running of the statute of limitations in an arm's-length relationship, as follows:

"The rule is well settled that the statute of limitations begins to run at such time as the fraud is discovered, or by the exercise of reasonable diligence might have been discovered. In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonably prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. . . ."

It was also noted that a different rule applied in a fiduciary relationship, to-wit:

"On the other hand, limitation does not begin to run in favor of a trustee and against the cestui until the latter has notice of a repudiation of the trust, and there is no duty to investigate at least until the cestui has knowledge of facts sufficient to excite inquiry. . . ."

The allegations contained in plaintiff's petition show that plaintiff was an experienced, large-scale farmer, who trusted defendant implicitly and had the utmost confidence in defendant's honesty and integrity. I recognize the rule that a relationship of trust and confidence can, and often does, arise from a purely personal relationship, when, over a long period of time, the parties have worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951). That, however, is not the case presented by this appeal. There is no pleading of any personal relationship which reveals any prior business dealings between the parties that could possibly constitute a fiduciary relationship before and apart from the relationship that was created by the 1956 agree-

ment. See Consolidated Gas and Equipment Company of America v. Thompson, 405 S.W.2d 333 (Tex.Sup.1966). The allegation that plaintiff and defendant "through repeated social and business contacts" became "very close personal friends" does not establish a relationship of trust and confidence because of such past association. There is no indication that plaintiff and defendant were related by either affinity or consanguinity; there were no family ties that could be used as a springboard for the establishment of a relationship of trust and confidence. The fact that defendant guaranteed loans made by plaintiff did not make defendant a "banker" for plaintiff. There is nothing in the pleadings that supports an inference that the parties were "partners". The fact that defendant may have paid plaintiff's debts during the years 1956 through 1961 does not establish a relationship of trust and confidence with respect to any issue in this case. This suit is not based upon the failure of defendant, as plaintiff's agent, to pay money due plaintiff's creditors. There are no allegations that establish a joint venture between plaintiff and defendant, or that they were associated together in any business. Plaintiff does not allege that the 1956 agreement was induced by fraud on the part of defendant. There is nothing in plaintiff's petition to indicate that plaintiff was under any disability, that the parties were not capable of dealing with each other on equal terms, or that plaintiff made the agreement and performed thereunder because of an overmastering dominance by defendant. Nothing more than friendly relations between the parties and confidence in defendant on plaintiff's part are shown by the pleadings. This is not enough to allege or establish a relationship of trust and confidence as a matter of law, or to raise a fact issue with respect thereto. In order to create a relationship of trust and confidence, there must be allegations of facts which approximate a business agency of some kind, a professional relationship, or a family tie; there must be something besides friendship and unilateral trust which

itself impels or induces the trusting party to relax the care and vigilance which he otherwise should, and ordinarily would, exercise.

Friendship alone does not establish a fiduciary relationship, nor do prior business and social contacts, of themselves, create a confidential relationship. Subjective trust is not enough to transform an oral agreement such as the one present in this case into a fiduciary relationship; businessmen generally do trust one another. Thigpen v. Locke, 363 S.W.2d 247 (Tex.Sup.1962). Plaintiff does not allege any facts, business transactions or other incidents which show that any confidential relationship existed between him and defendant. Conclusions to that effect are not sufficient.

All of plaintiff's allegations, including his subjective feelings and his conclusions set forth in his petition, show that his relationship with defendant was at arm's length. In particular, there are no allegations of fact that show a relationship of trust and confidence in this case because of a long-time purely personal relationship. The mere failure to perform an agreement or to carry out a promise cannot in itself give rise to a trust and confidence relationship that creates a fiduciary relationship between the promisor and the promisee, since such a breach does not in itself constitute an abuse of confidence or duty requisite to the existence of a constructive trust. See 54 Am.Jur. Trusts, § 221, p. 171.

Moreover, if the existence of confidence in the integrity and veracity that plaintiff had in defendant is a sufficient excuse to relieve plaintiff from the use of reasonable diligence to discover so important a matter as the true quantity of cotton and grain produced from his farms, then this excuse would be effective only so long as the relationship of trust and confidence continued, and limitations would then commence to run, not from the time that the quantity of production of cotton and grain could have been discovered by the use of ordinary dili-

gence, but from the time that the relationship of trust and confidence ceased to exist. Bass v. James, 83 Tex. 110, 18 S.W. 336 (1892). Here, assuming, arguendo, that such a relationship did exist, according to the only inferences that can be drawn from plaintiff's own allegations, the relationship ceased on September 30, 1961, and there was no longer any friendship between the parties from and after the end of the year 1965. In either event, more than two years elapsed before suit was filed.

It has long been the rule in this State that vague allegations of fraud are not sufficient to take the case out of the bar of the statute of limitations. The mere allegation that the plaintiff did not discover nor could have discovered the fraud by the use of reasonable diligence does not, of itself, afford a basis that prevents the running of the statute. Plaintiff should have gone further; he should have alleged facts that showed he could not have discovered the fraud by the use of reasonable diligence. Kuhlman v. Baker, supra; Bremond v. McLean, 45 Tex. 10 (1876); Logan v. Taylor, 118 S.W.2d 1094 (Tex.Civ. App.—Austin 1938, n. w. h.); Cohen v. Shwarts, 32 S.W. 820 (Tex.Civ.App.1895, n. w. h.).

When a person seeks to avoid the bar of the statute of limitation on the ground of fraud, it is incumbent upon him to allege the facts upon which he relies, so the court may determine from the facts alleged whether he is entitled to the relief sought. If it appears from the petition that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of ordinary care and prudence in the conduct of his own business, then he will be held to have had notice of everything which a proper use of such means would disclose. White v. Bond, 362 S.W. 2d 295 (Tex.Sup.1962); Sherman v. Sipper, supra; Powell v. March, 169 S.W. 936 (Tex.Civ.App.—Dallas 1914, writ ref'd);

McBurney v. Daugherty, 19 S.W.2d 113 (Tex.Civ.App.—Austin 1929, writ dism'd).

The party claiming fraud has a duty to use reasonable diligence in protecting his own business affairs. Thigpen v. Locke, supra. The fact that a person trusts and has placed confidence in another is not sufficient to excuse lack of diligence in investigating all aspects relating to his business. Lindsey v. Dougherty, 60 S.W.2d 300 (Tex.Civ.App.—Amarillo 1933, writ ref'd); Boren v. Boren, 38 Tex.Civ.App. 139, 85 S.W. 48 (1905, writ ref'd).

Plaintiff's allegations that a comparison of the cost of picking the cotton to the number of bales of cotton sold appeared reasonable to him, and that in years past he had experienced a comparable yield in the grain so reported, are insufficient factual allegations of diligence when tested by the rules announced in the foregoing cases. A mere examination of the accountings themselves and nothing else would not show diligence on the part of plaintiff, because it would hardly be expected that a diligent person seeking to find out whether the entries contained therein were true and correct would make such a determination solely on the basis of the information contained in the reports that were furnished him by the very person who was in a position to perpetrate a fraud upon him. See Carr v. McGinley Corporation, 105 S.W.2d 410 (Tex.Civ.App.—Texarkana 1937, n. w. h.).

Plaintiff's petition shows that while defendant did misrepresent the true yields in the several accountings, nevertheless, there were in existence (in defendant's possession) at all times true and accurate records of the actual production from plaintiff's farming operations. Plaintiff was bound to have had notice of the existence of those records, and it would have been an easy matter for plaintiff to have actually inspected such records within a reasonable time after the close of each crop year. The shortages were discovered in 1969 from an examination of those same books

and records. If, more than nine years after the last fraud was perpetrated, plaintiff, by methods then used, readily and successfully detected the fraud, there is no reason why a resort to such methods before then could not have accomplished the same purpose. Bass v. James, supra. Thus, it appears from plaintiff's own allegations that the means of detecting the fraud were at hand during all of the years in question. Such means of information would, in my judgment, have been used by a farmer in plaintiff's position in the transaction of business pertaining to his farming operations. Therefore, plaintiff should be held to have had notice of everything which an inspection of the records in defendant's possession would have disclosed; and the failure of plaintiff to seasonably avail himself of such means or avenues of information that were available to him presents an issue of law for the decision of the court, and not a question of fact for the determination by the jury. Boren v. Boren, supra.

Plaintiff's allegations show that he accepted the annual accountings without question, and made no attempt to verify the entries therein contained. He kept no records of his own relating to the production of cotton and grain from his farms, or of the expenses incurred. There are no allegations that access to defendant's record concerning the production figures from plaintiff's farm were denied plaintiff, that such records were concealed by defendant, or that defendant, after request by plaintiff, refused to supply plaintiff with information concerning plaintiff's farming operations. Plaintiff does not allege that defendant overcharged him, or that he was not paid the market price for the cotton and grain reportedly produced from his farms.

The formula used by plaintiff in computing the alleged shortages was available to plaintiff during each of the years in question. The alleged cotton shortages for the years 1956 to 1961, when averaged out, amount to about 17% of each year's production. For the year 1956, plaintiff alleged that his farm actually produced 553 bales of cotton, but defendant reported and paid for only 358 bales. The alleged shortage (195 bales) for that year comprised 35% of the production for the year, and had an alleged value of $32,943.30. Such a shortage, which occurred during the very first year following the making of the agreement, should have alerted plaintiff to the fact that something was wrong with defendant's accounting. It is difficult to understand how a farmer with plaintiff's skill, ability and previous experience in farming large tracts of land, could have allowed a 35% shortage of his cotton crop in a single year, or an average shortage of 17% over the years in question, to go unnoticed. The quantity of the cotton grown by plaintiff and delivered to defendant was so basic to plaintiff's business, that plaintiff's failure to investigate and determine for himself the true production figures on such a vital and important business matter can only be attributable to his own neglect, which under the circumstances, constituted want of ordinary diligence.

It so conclusively appears from the allegations of plaintiff's petition that he had the means of discovering the fraud alleged, and failed to exercise the diligence required of him by law to discover it, that ordinary minds could not differ in regard to it, and that defendant's special exception that plaintiff's cause of action was barred by the two-year statute of limitations was correctly sustained. I would affirm the judgment of the trial court.